26 So.2d 419

GORDON v. STATE.

1 Div. 511.

Court of Appeals of Alabama.

June 4, 1946.

W. C. Taylor, of Mobile, for appellant.

Wm. N. McQueen, Atty. Gen., and Bernard F. Sykes, Asst. Atty. Gen., for the State.

PER CURIAM.

In the consideration of this appeal, because of the unusual character of the case, all of the members of the court have carefully read the entire record; and, sitting en banc, have discussed the questions presented and have given them our attentive and careful consideration.

The facts adduced upon the trial below are too offensive to modesty, and too odious to allow their publication in our reports. We will therefore not discuss the sordid proof, nor need we deal specifically with the innumerable points of decision, or questions, presented.

The indictment charged the defendant with the offense of rape. To said indictment the defendant interposed his plea of not guilty, thus, the only issue involved upon the trial of this case was whether or not the defendant was guilty or innocent of the commission of the specific charge contained in the indictment, and none other. In other words, under the law the accused was called upon to answer the charge contained in the indictment only. A person charged with crime should be fully informed of the nature and cause of the accusation made against him before he is called to trial, and when so informed he cannot be called upon to answer any other charge in the same prosecution. The trial court specifically so held.

As to the nature of the evidence adduced upon the trial of this case, above referred to, we note that the experienced and able judge who tried the case entertained a similar view. In the opening remarks of the court in the oral charge to the jury, the court said: "It has been very unpleasant, all of us realize, to have to sit through such a lot of revolting testimony."

Upon the trial below the court properly defined rape, and in this connection, among other things, said:

"Rape has been defined by our Supreme Court as the unlawful carnal knowledge of a woman, by fear, threats, duress and against her will. Carnal knowledge, if

there is a penetration of the private parts of a woman by a person's fingers or otherwise, is not rape. It must be by the sexual organ, and there must be sexual intercourse.

"The whole question in the case is whether, or not, this sexual intercourse ·was had by force, and against her consent, or whether it was had by her consent. There is testimony here as to whether, or not, this woman was drunk and so drunk she did not know what she was doing, etc. The law in that respect I will read 'to you, because it is briefly stated by the Supreme Court that is to say,

" 'If the woman is mentally unconscious from drink, or sleep, or from other cause in a state of stupefaction, so that the act of the unlawful carnal knowledge on the part of the man was committed without her conscious and voluntary permission, the idea of force is necessarily involved in the wrongful act itself—the act of penetration. But even in cases of this kind the intent to use force, if necessary to accomplish the ·offense, is essential to·criminality.' "

■ In the case of McQuirk v. State, 84 Ala. 435, 4 So. 775, 5 Am.St.Rep. 381, the Supreme Court held the refusal of the following written charge was reversible error. The charge was as follows: 4. "If the jury believe, from the evidence, that the conduct of the prosecutrix was such toward defendant, at the time of the alleged rape, as to create in the mind of the defendant the honest and reasonable belief that she had consented, or was willing for defendant to have connection with her, they must acquit the defendant."

In discussing said charge, the court (through the late eminent Justice Somerville) said: "The fourth charge requested by the defendant should also have been given. The consent given by the prosecutrix may have been implied as well as express, and the defendant would be justified in assuming the existence of such consent if the conduct of the prosecutrix towards him at the time of the occurrence was of such a nature as to create in his mind the honest and reasonable belief that she had ·consented by yielding her will freely to the commission of the act. Any resistance on the woman's part falling short of this measure would be insufficient to overcome. the implication of consent."

■ As stated by the trial judge, necessary to a conviction for the crime of rape, it is essential that the evidence must show, (1) sexual intercourse between the man and woman involved, and (2) that such intercourse was accomplished by force, etc.

As to the sexual intercourse in the case at bar, the only testimony in the entire case on this question was that of the defendant, and he testified, without dispute or conflict, that the act was accomplished with the full consent of the woman and that she was not only willing, but was anxious, insistent, and co-operative in every way, and that the act was accomplished by the parties in a standing position.

The defendant further testified that at or about the time he and the woman were about to finish an aged ex-policeman rode up upon a bicycle and stopped, and as he and the woman came up from the bushes, he conversed with them for several minutes, and that the woman became alarmed and frightened thinking the old gentleman was an officer of the law, but was appeased and satisfied when she was informed differently. The woman claimed, and so testified, she "lost her recollection" (something hit her) and that she did not remember seeing the old gentleman at any time, that she only saw a negro, and she further testified so far as she knew the defendant had never had intercourse with her, etc.

It is conclusive from the evidence that the principals, the defendant and the alleged injured party, were total strangers prior to the day of the alleged act complained of. Throughout the whole evidence it clearly appears that the woman in question entered into the unholy escapade voluntarily, and of her own free will and accord, it appears that the intoxicating liquor was procured upon her own request and that she drank therefrom, too well but not wisely, and at no time during their nearly all day unholy association did the defendant urge her, persuade her or try to force her in any manner. We will go into all that no further.

The aged ex-policeman was a Mr. A. J. Goodwin, and was introduced as a witness by the State, and was unquestionably a

disinterested witness. He testified, among other things, that he was 76 years of age and on the day in question he was riding his bicycle for exercise in that vicinity and rode up to where these principals were, and when he first saw them they were coming towards him and were some 50 or 75 feet away. That the woman appeared to be drinking some, and had a bottle of liquor in her hands and invited him once or twice to take a drink with her. Other excerpts from the testimony of State witness Goodwin as to the physical condition of the woman at the time in which she claims "she had lost her recollection," are here copied from the transcript. Towit:

"Q. Mr. Goodwin, you remember the occasion when you saw this man here and that lady about whom you refer down there near the GM&O shops, near the old Frascati Building? A. Yes, I remember seeing them down there.

"Q. What was the occasion for you being down there? A. Well, I was just riding around on my bicycle; I was not doing anything but taking exercise. I got off my bicycle, and I think I leaned my bicycle up against the oak tree and was standing there, and they came up this way from the bay front.

"Q. That road leads down to the bay front? A. Yes, that is the way I understand, and I was coming up the main road to that place and I stood there, and the first I saw of them they were off down this way maybe 50 or 75 feet, coming towards me.

"Q. But you had to get to this point here before you could see them, is that right? A. Yes, sir.

"Q. Did either one of them holler out there or say anything to you? A. Not until they got up to where I was; they came right up here (indicating).

"Q. How were you dressed on that occasion? A. I had police trousers on, and I usually wear some of these uniform shirts that I still wear.

"Q. In other words, you had on an old police uniform such as you had when you were on the force? A. Yes, sir.

"Q. And when they came up to you they were, in fact, talking about the police, about you being a policeman, is that right? A. Yes, sir.

"Q. And then I believe you said you turned and told her that you were not a policeman, but you were a retired policeman, is that right? A. That is right.

"Q. Did she seem to be worried was the reason she was asking about a policeman? A. What is that?

"Q. Did this lady seem to be worried when she said something about you being a policeman? A. No, sir, I could not say she was.

"Q. Were they laughing and jolly? A. They were friends with one another, nothing unusual; they were on good terms, you could tell by the way they talked to one another.

"Q. She did not ask you to protect her in any way? A. No, she did not talk anything like that; she did not need any protection.

"Q. You say you talked about five minutes? A. Something like that; no more than that I do not think.

"Q. And she insisted on you taking a drink, I believe you said? A. Yes.

"Q. Did she ask you more than one time to take a drink with her? A. I think she did; I think she asked me a time or two to come on and have a drink.

"Q. Did they have a bottle of liquor there? A. Yes, sir, she had a bottle in her hand.

"Q. Did he have a bottle too? A. No, sir, she had the bottle at that time.

"Q. He did not have a bottle? A. No, sir.

"Q. You did not pay very much attention? A. I did not pay very much attention to the way she was dressed.

"Q. Were they laughing her and Mr. Gordon here,—were they laughing and talking? A. They were friendly to one another."

We are of the opinion, but slight, if any, credence could be accorded to the testimony of the unfortunate perverted woman involved. Not only because of her abnormal conduct as disclosed by the undisputed testimony, but for the further fact while giving her testimony she was hampered by the

presence of her husband who was in court at the time and listening to what she had to say. As shown above, the State's own witness, Mr. Goodwin, a disinterested witness, refuted her every statement relative to the condition she was in at the time of the alleged occurrence complained of.

Upon the trial of this case in the court below the defendant strenuously insisted throughout that the corpus delicti was not proven by the evidence and in every possible manner presented this question to the trial court, duly reserving exceptions in each instance to the adverse rulings of the court. We are of the opinion there is merit in this respect, but do not deem it necessary or essential to indulge in long discussion upon this question, as from the view we take of this case a reversal of the judgment of conviction from which this appeal was taken must be ordered and adjudged upon the action of the court in overruling and denying defendant's motion for a new trial. Said motion was predicated upon innumerable grounds. We are of the opinion that the verdict of the jury was not sustained by the evidence, and, also that said verdict was against the great weight and preponderance of the evidence.

As stated hereinabove, it is elementary law, to sustain a conviction for crime, the State must establish every material ingredient of the offense by evidence beyond a reasonable doubt. Facts and circumstances that are only suspicious of guilt will not suffice. Rumors and suspicions may be born of such facts and depend on such inferences, but not the verdict of a jury. The loathsome evidence in this case as a whole is calculated to impress the jury with the fact that the defendant is not a good citizen and that his conduct on that occasion was in many respects highly reprehensible, to which it is easy to accord, but the evidence falls far short of the requirement that the jury must be convinced beyond all reasonable doubt that the defendant is guilty of the actual offense charged. Being clearly convinced that the verdict and judgment are wrong, we must and do hold that the judgment of conviction from which this appeal was taken is reversed and the cause remanded. Reversed and remanded.