381 A.2d 157

COMMONWEALTH of Pennsylvania

v.

David DUFFY, Appellant.

Superior Court of Pennsylvania.

Argued Nov. 15, 1976.

Decided Dec. 2, 1977.

150

M. Richard Mellon, Pittsburgh, for appellant.

George E. Anthou, Assistant District Attorney, Canonsburg, and Jess D. Costa, District Attorney, Bentleyville, submitted a brief for Commonwealth, appellee.

Before JACOBS, HOFFMAN, CERCONE, PRICE, VAN der VOORT and SPAETH, JJ.

VAN der VOORT, Judge:

Appeal is taken to our Court from judgment of sentence rendered, following jury verdict and denial of post-trial motions, upon an indictment charging the crimes of accessory and receiving stolen property.[1] The charges stemmed from a December 4, 1972, burglarious entry into a gun shop in Eighty Four, Pa., and the removal therefrom of rifles, shotguns, handguns, and ammunition.

 On the morning of trial, prior to voir dire, Judge GLADDEN and counsel met in the chambers of the court, where and when defense counsel mentioned that he had learned from the office of the District Attorney "that one of the prosecution witnesses might make some statement implicating me [counsel himself] in some way in the disposition of these weapons." (Quoting from the Notes of Testimony of

---

1. "The Penal Code", Act of 1939, June 24, P.L. 872, 18 P.S. §§ 5105 and 4817 respectively. A demurrer was sustained to the third charge, conspiracy, Act, id., § 4302.

the trial, p. 2).[2] The attorney for the Commonwealth stated his ignorance of the truth of the statement, agreed with defense counsel that it would be prejudicial, if used, and stated that the prosecution had no intention of permitting this testimony to be aired. And during trial, which began immediately after the above-referenced discussion in chambers and lasted from March 25 through 27, 1974, not the slightest hint of this allegation, either by direct statement or inference, was placed within the hearing of the jury. However, appellant now argues that he was denied effective assistance of counsel, and that his counsel was crippled in his ability to represent him due to the disclosure at trial of this unfounded allegation. The argument is wholly without merit because the jury never heard this charge, and thus in no way could it be prejudicial to either defendant or his counsel.[3] Appellant's present argument is undermined by the fact that counsel took no action to be relieved from serving, and we must conclude that his expressed belief that he was rendered unable to be an effective advocate was not recognized at the trial stage. Appellant suffered no prejudice, and was represented to the fullest extent by his counsel; there is no error. Appellant's second argument is that he was denied the presumption of innocence when the lower court in its charge referred to him as "prisoner".[4] The one use of the word "prisoner" arose in the court's discussion of the common law crime of accessory before the fact: "[E]ven

2. Counsel was Robert K. Stitt, III, formerly a member of the bar from Allegheny County, disbarred on September 30, 1974.

3. We note also that the meeting in chambers occurred following the selection of the panel of jurors, but before twelve of that body were selected and sworn; thus the statement arose prior to trial. The objection was not preserved at trial, and in the strictest theoretical sense could be considered waived.

4. In his brief, appellant has added a second argument to the claim of having been shorn of the presumption of innocence—that a police officer, in street clothes, was present at voir dire. This objection was raised and overruled at the conference in chambers prior to the start of trial (see first issue above). This was not preserved by inclusion in the post-trial motions filed by Stitt, or the amended motion filed by Attorney D. Stephen Ferito, and is waived. *Commonwealth v. Clair,* 458 Pa. 418, 326 A.2d 272 (1974).

though the prisoner may not have been the actual perpetrator of the crime, if he falls within the definition of an accessory before the fact . . . then he is to be treated in law and in every respect as though he were in fact the person who committed the offense." (Quoting from the Notes of Testimony, p. 234). Following the jury's retirement for deliberation, the statement by the court was brought to its attention, albeit without formal objection or suggestion for amendment or correction. It is our duty to read the charge as a whole to determine if reversible error is to be found. *Commonwealth v. Stoltzfus,* 462 Pa. 43, 337 A.2d 873 (1975). So doing in the instant case, we conclude that the lower court, in its use in a single instance of the word "prisoner" in instructing the jury on the law pertaining to accessory before the fact has not erred. Repeated reference to a defendant as "the prisoner", could be prejudicial. While the accused or defendant is, to be sure, a "prisoner" in the sense of one being detained under arrest, while awaiting trial, that description of a person on trial is less desirable than "defendant" or "accused". Where, as here, it is used only once, and in a context where general instructions on a legal theory are being given, the term cannot sway the jurors' minds to a position of prejudice against the defendant. See *Commonwealth v. Rumage,* 359 Pa. 483, 59 A.2d 65 (1948).

Judgment of sentence affirmed.

HOFFMAN, J., files a dissenting opinion in which CERCONE and SPAETH, JJ., join.

HOFFMAN, Judge, dissenting:

I believe that a conflict of interest may have vitiated the effectiveness of the representation provided by appellant's trial counsel. Therefore, I dissent and would grant appellant a new trial.

On December 4, 1972, a burglary occurred at a gun shop in the town of Eighty Four, Washington County, Pennsylvania. Subsequently, Washington County authorities arrested appellant on charges of being an accessory before and after

the fact of burglary and larceny, receiving stolen property, and conspiracy. Trial was scheduled for March 25, 1974, in the Washington County Court of Common Pleas. On that date, after selecting and seating a panel of jurors, but before conducting voir dire, the prosecutor, appellant's counsel, and the trial court engaged in the following interchange at sidebar:[1]

"[Defense counsel]: . . . [T]he Office of the District Attorney has suggested that one of the prosecution witnesses might make some statement implicating me in some way in the disposition of these weapons. If that's the case, I would ask for the revelation of that information immediately and ask for a continuance to give the defendant an opportunity to obtain other counsel. Such a thing occurring in the middle of a trial would be extremely prejudicial to my client. . . .

"[Prosecutor]: Your Honor, . . . it is my intention not to introduce that evidence, I am not certain whether it is valid or not, in any event, but I don't want it in the case in any—

"THE COURT: Is it relevant to this case?

"[Prosecutor]: It is, I think, if it were true, but I think it would be so prejudicial that it might vitiate the case altogether.

"[Defense counsel]: The suggestion, by apparently one of the witnesses, was that I was to be the recipient of some of the fruits in order of fee, is that correct?

"[Prosecutor]: That's correct.

"[Defense counsel]: I don't think there is any suggestion that I ever actually received them, but it's this sort of nonsense that would be highly prejudicial to Mr. Duffy.

"THE COURT: Well, the District Attorney has advised the Court that they do not intend to permit that evidence to be placed on the record.

1. The Majority erroneously states that this interchange occurred in chambers. However, while the discussion did take place in the presence of the jury, no one alleges that the jury overheard any part of the interchange.

"[Defense counsel]: I certainly would take the necessary steps to caution whoever this came from, so that there is—

"THE COURT: We would direct the District Attorney to do that, and with that understanding we will overrule your . . . objection. Note an exception."

The Commonwealth did not introduce any evidence which implicated appellant's counsel in the disposition of the fruits of the crime; no reference to this allegation emerged at trial.

On March 27, 1974, the jury acquitted appellant on the conspiracy charge, but returned guilty verdicts on all other charges. On April 1, 1974, appellant's trial counsel filed written post-verdict motions pursuant to Pa.R.Crim.P. 1123(a); 19 P.S. Appendix. Counsel did not raise the issue of a possible conflict of interest. On September 30, 1974, before any further action on the post-verdict motions, the Pennsylvania Supreme Court disbarred appellant's counsel because of his conviction on charges of mail fraud in the Western Pennsylvania federal district court. Thereafter, appellant retained new counsel who filed an amended motion for a new trial which specifically claimed that:

"The Court erred in permitting the defendant to be represented by Robert Stitt, Esquire, after having been advised by Robert Stitt, Esquire that he was fearful that one potential witness would implicate him with receiving some of the fruits of the crime herein involved thus showing a possible conflict of interest sufficient to deprive the defendant of adequate representation of counsel.[2] After hearing oral argument, the lower court denied all post-verdict motions. On May 5, 1975, the court sentenced appellant to a 4½–10 year term of imprisonment. The court also ordered appellant to make restitution in the amount of $6000 to the

2. *Commonwealth v. Hubbard,* 472 Pa. 259, 372 A.2d 687 (1977) requires that new counsel raise claims of ineffective assistance of prior counsel at the earliest possible opportunity after he undertakes representation. By raising the claim of ineffective assistance of counsel in the amended motion for a new trial, appellant's new counsel complied with *Hubbard.*

victim, and to pay the costs of the prosecution. This appeal followed.

Appellant contends that his trial counsel could not effectively represent him because counsel labored under a conflict of interest stemming from the allegation that counsel had agreed to receive stolen weapons from appellant as part of his fee.[3] The United States Supreme Court has declared that the right to counsel guaranteed by the Constitution contemplates the services of an attorney dedicated solely to the interests of his client. *Von Moltke v. Gillies,* 332 U.S. 708, 725, 68 S.Ct. 316, 92 L.Ed. 309 (1948); *Glasser v. United States,* 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680 (1942). Succinctly, "[an impermissible] conflict of interest arises where the lawyer is faced with the task of giving advice to the client on optional courses of action where the lawyer stands to benefit personally from the adoption of one course to the exclusion of the other." *United States ex rel. Simon v. Murphy,* 349 F.Supp. 818, 823 (E.D.Pa.1972). While most conflict of interest cases involve a lawyer's multiple representation of co-defendants, ". . . the constitutional principle is not narrowly confined to instances of that type.

**3.** I believe that the Majority does not properly frame and address this issue. The Majority states that ". . . appellant now argues that he was denied effective assistance of counsel and that his counsel was crippled in his ability to represent him *due to the disclosure at trial* of this unfounded allegation." (At 151) (Emphasis supplied). In fact, appellant now argues that the mere existence of counsel's potentially damaging conflict of interest eviscerated the adequacy of counsel's representation, regardless of whether the jury overheard the sidebar discussion implicating appellant's counsel in the crime of receiving stolen property. Moreover, appellant does not concede that the allegation was unfounded; I am unable to discern how the Majority has determined that the charge lacks merit.

Because the Majority misconstrues the issue presented to us by appellant, it intimates that appellant's trial counsel may have waived his pre-trial objection by failing to reiterate it at trial. (At 151, footnote 3). However, counsel is not expected to raise 'his own ineffectiveness, and a defendant is not expected to divine and raise at trial, on his own, his trial counsel's conflict of interest. *Commonwealth v. Hubbard,* supra; *Commonwealth v. Booker,* 219 Pa.Super. 91, 280 A.2d 561 (1971). Appellant's new counsel raised trial counsel's ineffectiveness due to a conflict of interest at the earliest possible opportunity and, thus, properly preserved this issue for our consideration. See footnote 2, supra.

The cases reflect the sensitivity of the judiciary to an obligation to apply the principle whenever counsel is so situated that the caliber of his services may be substantially diluted. Competition between the client's interests and counsel's own interests plainly threatens that result, and we have no doubt that the conflict corrupts the relationship when counsel's duty to his client calls for a course of action which concern for himself suggests that he avoid." *United States v. Hurt,* 543 F.2d 162, 166 (D.C.Cir.1976).[4]

Pennsylvania courts have most frequently considered claims of conflict of interest between counsel and a defendant when counsel represented multiple defendants at trial. In *Commonwealth ex rel. Whitling v. Russell,* 406 Pa. 45, 48, 176 A.2d 641, 643 (1962), our Supreme Court adopted the following prophylactic rule:

"If, in the representation of more than one defendant, a conflict of interest arises, the mere existence of such a conflict vitiates the proceedings, even though no *actual* harm results. The potentiality that such harm *may* result, rather than that such harm *did* result, furnishes the appro-

4. In accordance with the Code of Professional Responsibility, appellant's trial counsel should have withdrawn once the allegation of criminal complicity surfaced. Ethical Considerations 5–1 and 5–2 provide:

"The professional judgment of a lawyer should be exercised, within the bounds of the law, solely for the benefit of his client and free of *compromising influences and loyalties.* Neither his personal interests, the interests of other clients, nor the desires of third persons should be permitted to dilute his loyalty to his client.

"A lawyer should not accept proffered employment if his personal interests or desires will, or there is a reasonable probability that they will, affect adversely the advice to be given or services to be rendered the prospective client. After accepting employment, a lawyer carefully should refrain from acquiring a property right or assuming a position that would tend to make his judgment less protective of the interests of his client." Moreover, Disciplinary Rule 5–101(A) provides:

"(A) Except with the consent of his client after full disclosure, a lawyer shall not accept employment if the exercise of his professional judgment on behalf of his client will be or reasonably may be affected by his own financial, business, property, or personal interests." If the allegation was truthful, counsel should never have agreed to represent appellant.

priate criterion." (Emphasis in original). The *Whitling* court adopted this prophylactic rule because it was necessary ". . . to preclude such an attorney from putting himself in a position where he may be required to choose between conflicting duties or to be led to an attempt to reconcile conflicting interests rather than to enforce, to their full extent, the rights of the party whom he should alone represent." *Whitling,* supra 406 Pa. at 49, 176 A.2d at 643.

In *Commonwealth v. Breaker,* 456 Pa. 341, 344-45, 318 A.2d 354, 356 (1974), our Supreme Court reaffirmed its approval of the prophylactic rule formulated in *Whitling* and summarized the rules applicable in dual representation cases:

"First, '[i]f, in the representation of more than one defendant, a conflict of interest arises, the mere existence of such conflict vitiates the proceedings, even though no *actual* harm results. The potentiality that such harm *may* result, rather than that such harm *did* result, furnishes the appropriate criterion.' *Commonwealth ex rel. Whitling v. Russell,* 406 Pa. 45, 48, 176 A.2d 641, 643 (1962). Second, a defendant must demonstrate that a conflict of interest actually existed at trial, because 'dual representation alone does *not* amount to a conflict of interest.' *Commonwealth v. Wilson,* 429 Pa. 458, 463, 240 A.2d 498, 501 (1968); *Commonwealth ex rel. Corbin v. Myers,* 419 Pa. 139, 213 A.2d 356 (1965), cert. denied, 386 U.S. 1013, 87 S.Ct. 1361, 18 L.Ed.2d 445 (1967). Third, '[t]o make the dual representation rise to a true conflict, appellant need not show that actual harm resulted, . . . but he must at least show the possibility of harm . . . .' *Commonwealth v. Wilson,* supra, 429 Pa. at 463, 240 A.2d 501. Fourth, appellant will satisfy the requirement of demonstrating possible harm, if he can show, inter alia, 'that he had a defense inconsistent with that advanced by the other client, or that counsel neglected his case in order to give the other client a more spirited defense.' Id. Accord, *Commonwealth v. Cox,* 441 Pa. 64, 69, 270 A.2d 207, 209 (1970) (plurality opinion)." (footnote omitted) (Emphasis in original). See also *Commonwealth v. Knight,* 245 Pa.Super.

337, 369 A.2d 431 (1976); *Commonwealth v. Wilson,* 429 Pa. 458, 240 A.2d 498 (1968); *Commonwealth v. Westbrook,* 245 Pa.Super. 174, 369 A.2d 350 (1976); *Commonwealth v. Johnson,* 223 Pa.Super. 307, 299 A.2d 367 (1973). Note, *Maintaining the Attorney's Independent Professional Judgment— Canon 5,* 79 Dickinson L.Rev. 675 (1975). In particular, *Breaker* stressed that "[t]he right to have the assistance of counsel is too fundamental and absolute to allow courts to indulge in nice calculations as to the amount of prejudice arising from its denial." Supra, 456 Pa. at 346, 318 A.2d at 356 (quoting from *Glasser v. United States,* supra, 315 U.S. at 76, 62 S.Ct. 457). In sum, an appellant seeking relief under *Commonwealth v. Breaker,* must demonstrate that his lawyer attempted to serve clients with divergent interests and that the strain of this joint representation may possibly have imperiled the appellant's defense.[5]

Appellate courts have not frequently confronted claims of conflict of interest between counsel and an accused outside the multiple representation context. However, when so confronted, they have uniformly reinforced the central message of multiple representation cases: counsel must give undivided loyalty to his client. If counsel and client have divergent interests which could potentially compromise counsel's dedication to his client and his conduct of the defense, then a retrial will be mandated. For example, in *Pirillo v. Takiff,* 462 Pa. 511, 341 A.2d 896 (1975), a judge supervising a regular grand jury conducting a special investigation into police corruption disqualified an attorney from representing twelve police officers scheduled to testify before the grand jury. The Pennsylvania Supreme Court

---

5. In *Commonwealth v. Dunlap,* 474 Pa. 155, 377 A.2d 975 (1977), our Supreme Court rejected per curiam, a contention that a new trial should be ordered because the *prosecuting* attorney in an aggravated assault and battery case had represented the victim in a civil suit arising from the same incident. Justice Roberts authored a dissenting opinion, joined by two other Justices, which focussed on the *potential* for abuse in such dual representation. See also *Commonwealth v. Dunlap,* 233 Pa.Super. 38, 335 A.2d 364 (1974) (Dissenting Opinion by Hoffman, J.) *Dunlap* does not change the *Whitling* prophylactic rule pertaining to dual representation by *defense* counsel.

affirmed. However, instead of basing its results on the existence and possible repercussions of multiple representation, the Court focussed on the attorney's retention and payment by the Fraternal Order of Police (F.O.P.). The F.O.P. had adopted a tactic of non-cooperation with the investigation. A lawyer dependent on the F.O.P. for his fee would have an interest in advising individual clients to "stonewall" the investigation, even if that client might gain from a strategy of co-operation. Because the lawyer owed conflicting obligations to employer and client, our Supreme Court concluded that the lawyer could not effectively represent his client and had to be disqualified. Cf. *Salus's Case*, 321 Pa. 106, 184 A. 70 (1936); *In re Abrams*, 56 N.J. 271, 266 A.2d 275 (1970). (Lawyers who represented "numbers runners" disciplined because they were retained and paid by gambling syndicates who had hired runners; attorneys paid by such syndicates were unlikely to recommend that their clients co-operate with a state investigation of gambling.)

In *United States v. Hurt*, 177 U.S.App.D.C. 271, 543 F.2d 418, the District of Columbia Court of Appeals upheld a claim of conflict of interest between appellate counsel and his client. On appeal, counsel claimed that trial counsel had not provided effective representation; the circuit court remanded for an evidentiary hearing on this claim. Subsequently, trial counsel filed a two million dollar libel suit against appellate counsel. At the remand hearing, appellate counsel, afraid to "republish" the alleged libel, asked to withdraw from further representation of his client. The district court refused to release counsel because it believed that all statements at the hearing would be absolutely privileged. At the end of the hearing, the district court rejected defendant's claim of ineffective assistance of trial counsel. On appeal from that determination, the District of Columbia Circuit Court of Appeals held that the district court erred in refusing to allow counsel to withdraw, regardless of whether or not his statements were absolutely privileged. Appellate counsel, rightly or wrongly, feared that vigorously pursuing his client's ineffectiveness claim might

endanger his own position in the libel suit. As a consequence, counsel may have forsaken his duty to advocate his client's interest fearlessly and effectively in order to guard his own self-interest.

In *United States ex rel. Simon v. Murphy*, 349 F.Supp. 818 (E.D.Pa.1972), the district court granted a new trial to a wife charged with murdering her husband. Trial counsel agreed to take part of his fee from the husband's life insurance policy proceeds which the wife would receive if she was acquitted. If the wife was not acquitted, the lawyer would lose this part of his fee. The district court found that the defendant might have pleaded guilty if her attorney had communicated a plea bargain offer to her. This blatant conflict between the lawyer's pecuniary interest and his professional duty to advise his client of all possible options necessitated a new trial.

The *Whitling-Breaker* line of multiple representation cases, and *Pirillo v. Takiff, United States v. Hurt,* and *United States ex rel. Simon v. Murphy* all stand for a common and fundamental proposition: a lawyer must be devoted solely to his or her client's interests. If the interest of other clients or the lawyer's self-interest has the potential to impair his representation of a client, then the client will be entitled to a new trial.

In the instant case, a potential Commonwealth witness accused appellant's attorney of agreeing to receive stolen property as part of his fee.[6] In short, the attorney had been accused of participating in the very same crime as his client.

6. The record does not disclose that counsel revealed this allegation to his client. See Code of Professional Responsibility, DR5–101–A, footnote 4, supra. American Bar Association, Standards of Criminal Justice, Standards Relating to the Defense Function, 3.5(a) provides that:

"At the earliest feasible opportunity defense counsel should disclose to the defendant any interest in or connection with the case or any other matter that might be relevant to the defendant's selection of a lawyer to represent him."

Of course, if the allegation was truthful, appellant would know. However, appellant might not understand the full range of repercussions to his defense that could result from his lawyer's complicity. *Commonwealth v. Booker,* supra.

I believe that this allegation alone raised a conflict of interest between appellant and his counsel which may have prejudiced appellant. *Commonwealth v. Breaker,* supra. Appellant need only demonstrate that a *potential* for abuse of the client-attorney relationship existed; appellant bears no obligation to prove that this abuse actually occurred. *Glasser v. United States,* supra; *Commonwealth v. Breaker,* supra; *Commonwealth v. Johnson,* supra.

Appellant has shown a potential for abuse in the case at bar. Instead of giving his undivided effort and loyalty to his client, counsel may have altered his handling of the case to serve his own self-interest in escaping further inquiry into his conduct. *United States v. Hurt,* supra. For example, counsel may not have pursued the possibility of guilty plea negotiations on behalf of his client. Regardless of whether the allegation of criminal conduct contained any seeds of truth, counsel may have realized that only an acquittal would totally vindicate his interests as well as his client's interests. Moreover, a guilty plea might be the first link in a chain connecting counsel to the disposition of the stolen property. Armed with appellant's guilty plea and the statement of its potential witness, the Commonwealth may well have decided to indict appellant's attorney next. The Commonwealth may even have decided to condition a guilty plea offer on appellant's willingness to incriminate his attorney; this offer could not be communicated so long as appellant's original counsel remained in the case.[7] In short counsel's self-interest may have precluded thorough exploration of the benefits to be gained through co-operation with the Commonwealth. *Commonwealth ex rel. Simon v. Murphy,* supra; *Pirillo v. Takiff,* supra; *In the Matter of Abrams.* Additionally, counsel may have altered his trial strategy to

7. See Code of Professional Responsibility, Disciplinary Rule 7–104(A)DR7–104(A) provides, in pertinent part:
 "During the course of his representation of a client a lawyer shall not:
 (1) Communicate or cause another to communicate on the subject of the representation with a party he knows to be represented by a lawyer in that matter unless he has the prior consent of the lawyer representing such other party or is authorized by law to do so."

prevent the possible revelation of his alleged agreement to receive stolen property. In particular, counsel may have restricted his cross-examination of Commonwealth witnesses with regard to his client's alleged possession of the stolen property. Accordingly, appellant has met his burden of demonstrating that (1) a conflict of interest existed, and (2) a potential for abuse arose from this conflict of interest. *Glasser v. United States*, supra; *Commonwealth v. Breaker*, supra.

Because appellant and his trial counsel, accused of participating in the same crime, had a conflict of interest which may have been detrimental to appellant, I respectfully dissent and would grant appellant a new trial.

CERCONE and SPAETH, JJ., join in this dissenting opinion.