439 A.2d 765

**COMMONWEALTH of Pennsylvania**

v.

**Leon WILLIAMS, Appellant.**

Superior Court of Pennsylvania.

Argued March 17, 1980.

Filed Jan. 5, 1982.

Arthur J. King, Assistant Public Defender, Norristown, for appellant.

David M. McGlaughlin, Assistant District Attorney, Norristown, for Commonwealth, appellee.

Before PRICE, CAVANAUGH and WATKINS, JJ.

WATKINS, Judge:

This case comes to us on appeal from the Court of Common Pleas of Montgomery County, Criminal Division, and involves the defendant-appellant's appeal of his convictions by a jury of rape, simple assault-menace, and involuntary deviate sexual intercourse. He was acquitted of terroristic threats and kidnapping. Demurrers were sustained on charges of unlawful restraint, false imprisonment and simple assault-attempted. Verdicts of not guilty were directed on the charge of indecent assault.

On March 3, 1978 at approximately 7:15 P.M., Dolores Contreras, a student at Temple University, was standing on the corner of North Broad and Norris Streets in Philadelphia waiting for a bus which would take her into Center City. She planned to catch a bus at the Center City terminal which would take her to Alabama where she planned to visit her sister. It had been snowing heavily at the time for several hours and the buses were running late. At the above-mentioned time the defendant drove past Ms. Contreras in his automobile and asked her if she wanted a ride. She declined. The defendant turned, proceeded north on Broad Street, turned around, and within a few moments, returned to the scene travelling south on Broad Street and again asked Ms. Contreras whether she needed a ride. This time she accepted.

The defendant then proceeded south on Broad Street toward Center City Philadelphia. Suddenly he changed directions and drove west toward the Schuylkill Expressway. When Contreras asked where he was going the defendant said, "You are going with me, this ought to teach you not to

get in cars with strangers". He then drove onto the Schuylkill Expressway and told her to remain in the vehicle, to shut up and to do everything he said. As she moved to the door on the passenger side of the vehicle the defendant leaned over, bolted the door and threatened to kill her if she attempted to leave the vehicle. The defendant then continued to drive west out of the City of Philadelphia. Ms. Contreras testified at trial that the defendant kept his hand in his pocket at all times and that she believed that he might have been holding a weapon. The defendant then told her that all he wanted was "a little sex." She responded to this statement by asking him whether he would want something like that to happen to his sister. The defendant then threatened to kill her again. He drove to Fairmount Park, stopped the vehicle, got out and looked around, and then returned to the vehicle which he drove to Monument Avenue in Lower Merion Township, Montgomery County. This was a dark area with few homes. At this point Contreras informed the defendant that if he "wanted to proceed with this, to go ahead", because she did not want him to hurt her. The defendant then parked the vehicle and instructed her in the sexual acts he wished her to perform. These included acts of oral sex in the front seat of the vehicle. They then moved to the back seat where he had sexual intercourse with her. After 45 minutes the defendant drove her to the Center City bus terminal where she got out of the vehicle, recorded its license number, and informed the police that she had been raped. The defendant was arrested a few hours later. On July 19, 1978 he was convicted of the charges as set forth previously in this opinion. He was sentenced to a prison term of three and one-half to fifteen (3 & ½—15) years. The defendant appealed his judgment of sentence on August 10, 1979.

Defendant's first contention is that the facts adduced at trial are insufficient to sustain the jury's verdict. He argues that the above stated facts negate any finding that he raped Contreras and argues that she gave him permission because she did not fight him, displayed no hysteria after the incident on the way to the bus station, and had stated words to

the effect that defendant might as well get it (the rape) over with as soon as possible. We do not agree.

A person commits the crime of rape when he engages in sexual intercourse with another person not his spouse by forcible compulsion; or by threat of forcible compulsion that would prevent resistance by a person of reasonable resolution; or who is unconscious; or who is incapable of consent because of a mental deficiency which would preclude the person of consenting. *18 Pa.C.S.A. 3121.* The same criteria apply to the crime of involuntary deviate sexual intercourse. *18 Pa.C.S.A. 3123.* The force necessary to support convictions for rape and involuntary deviate sexual intercourse need only be such as to establish lack of consent and to induce the woman to submit without additional resistance. *Commonwealth v. Irvin,* 260 Pa. Superior Ct. 122, 393 A.2d 1042 (1978). It is not necessary that the victim be beaten, that the victim cry, that the victim become hysterical, or that she be threatened by a weapon for the crime of rape to occur. The degree of force required to constitute rape is relative and depends upon the facts and particular circumstances of the case. It is not necessary that force be actually applied by the perpetrator to the victim. *Commonwealth v. Irvin,* supra. In the instant case the testimony revealed that the defendant threatened the prosecutrix with death at least twice. The fact that she ultimately decided that it was pointless to physically resist the defendant after he had so threatened her does not establish conclusively that the prosecutrix gave her consent to the acts. This is a jury question and the jury properly resolved the issue in favor of Ms. Contreras. Nothing has been presented by the defendant to justify overturning the jury's determination of this issue.

The defendant further contends that because the jury acquitted him of the terroristic threats charge that it logically had to disbelieve the testimony of the prosecutrix relative to the threats on her life and that therefore the jury's verdict of guilty on the other charges was inconsistent with the acquittal verdict on the terroristic threats charge. Consistency in verdicts in criminal cases is not necessary and

logical inconsistencies will not serve as grounds for reversal. *Commonwealth v. Warlow,* 246 Pa. Superior Ct. 224, 369 A.2d 1293 (1977). Furthermore, since the crime of terroristic threats *(18 Pa.C.S.A. 2706)* is a specific intent crime in that the intent to terrorize is a necessary element thereof, it could very well be the case that the jury believed that defendant's ultimate goal in threatening to kill the prosecutrix was not to terrorize her but to compel her to have sexual intercourse with him and that therefore, in its mind, it did not feel that a conviction of the crime of terroristic threats was warranted while conviction on the rape and involuntary deviate sexual intercourse charges (general intent crimes) were warranted. Such speculation is the reason that logical inconsistencies in criminal case verdicts are not grounds for reversal. We find that the facts of the case do indeed support the jury verdicts on the rape, involuntary deviate sexual intercourse and simple assault-menace charges.

■ Defendant also claims that the court below prejudiced the jury when it referred to Ms. Contreras as the "victim" on several occasions during its charge to the jury. We do not agree. Reference to the prosecutrix in a rape case as "the victim" is not an expression of the judge's opinion as to the guilt of the defendant. In its opinion the court below stated:

"It should be noted that the first reference to Miss Contreras was as the 'alleged victim', another time as a 'person', and on other occasions as the 'victim'. Perhaps, in hindsight, it would have been more appropriate to continue to refer to Miss Contreras as the 'alleged victim' or the 'prosecutrix'; however reference to the complainant in a rape case as 'the victim' is not an expression of the judge's opinion as to the guilt of the defendant. In fact, in *Commonwealth v. Pride,* 252 Pa. Superior Ct. 34 [380 A.2d 1267] (1977), our Superior Court recently made numerous references to the complainant in a rape case as the 'victim' where consent was very much at issue.

"Our courts have ruled that the use of more aggravating terminology constituted harmless error. For example,

use of the word 'murder' instead of 'killing,' *Commonwealth v. Rumage*, 359 Pa. 483, 488 [59 A.2d 65] (1948); reference to the defendant on a single occasion as 'prisoner' instead of the 'defendant' or 'accused', *Commonwealth v. Duffy*, 252 Pa. Superior Ct. 148, 151–2 [381 A.2d 157] (1977); and references to co-defendants as 'habitual criminals' where the record established numerous prior arrests, *Commonwealth v. Moyer*, 357 Pa. 181, 199 [53 A.2d 736] (1947), were insufficient to sway the jurors' minds to a position of prejudice against the defendant."

In reviewing the entire charge to the jury, as we must, we find that the court informed the jury on several occasions that it was their recollection of the facts which was controlling and that they had to find the defendant guilty of all facts necessary to constitute the crimes beyond a reasonable doubt. The charge, taken in its entirety, was not so prejudicial to the defendant so as to necessitate a new trial.

Defendant also claims that the court below erred when it "raised its voice" when it said the word "threats" to the jury during its charge. The court stated that it didn't mean to emphasize the use of the word "threats" during its charge. Of course, this issue is one which an appellate court cannot properly resolve from the record since inflections in the use of one's voice obviously do not appear in the transcript. So, to some extent at least, we must rely on the professionalism and good faith of our trial judges in such matters. There are, perhaps, some occurrences at the trial level which are impossible to review on appeal. Suffice it to say that as an appellate court we will continue to review every aspect of proceedings at the trial level which are possible to review. There are, however, limitations on our ability to review effectively each and every minor detail which occurs at trial. In any event a reading of the entire charge to the jury convinces us that the charge, read as a whole, was fair and, without better reason than the defendant has given us, we will not hold that the court committed reversible error in its charge to the jury.

■ Finally, the defendant contends that the court should have instructed the jury that if the defendant reasonably

believed that the prosecutrix had consented to his sexual advances that this would constitute a defense to the rape and involuntary deviate sexual intercourse charge. Defendant relies on the obscure Alabama case of *Gordon v. State,* 32 Ala.App. 398, 26 So.2d 419 (1946) for this proposition. The defendant requested this charge and the court below declined to so instruct the jury. In so refusing the proffered charge the court acted correctly. The charge requested by the defendant is not now and has never been the law of Pennsylvania. The crux of the offense of rape is force and lack of victim's consent. *Commonwealth v. Walker,* 468 Pa. 323, 362 A.2d 227 (1976). When one individual uses force or the threat thereof to have sexual relations with a person not his spouse and without the person's consent he has committed the crime of rape. *18 Pa.C.S.A. 3121.* If the element of the defendant's belief as to the victim's state of mind is to be established as a defense to the crime of rape then it should be done by our legislature which has the power to define crimes and offenses. We refuse to create such a defense.

Judgment of sentence affirmed.

CAVANAUGH, J., files a concurring opinion.

CAVANAUGH, Judge:

I concur in the result of this opinion and agree that the judgment of sentence should be affirmed. However, I disagree with the majority's statement that:

> [to] some extent at least, we must rely on the professionalism and good faith of our trial judges in such matters. There are, perhaps, some occurrences at the trial level which are impossible to review on appeal. Suffice it to say that as an appellate court we will continue to review every aspect of proceedings at the trial level which are possible to review. There are, however, limitations on our ability to review effectively each and every minor detail which occurs at trial.

In the instant case the record contains only the following concerning the trial judge's alleged raising of his voice:

MR. HEMPHILL: Yes. First of all, everytime you mentioned 'threats', you raised your voice and emphasized the word.

THE COURT: Well, just because I raised my voice I didn't mean to emphasize the use of the word 'threats'. I don't know what I can say, I really don't recall.

Counsel sought no further remedy than to call the judge's attention to the claim that he had raised his voice. The issue is waived on appeal, as counsel did not request cautionary instructions or take any other action with respect to this conduct by the judge. In addition, we agree with the majority that a fair reading of the charge adequately demonstrates its fairness despite any inadvertent voice inflections which might have occurred.

Unfortunately this court is not permitted to rely on the professionalism and good faith of the trial judge with respect to errors in the trial of a case. It is the duty of an appellate court to fully review each case on appeal within the parameters of the facts as they appear in the record and the applicable law. Moreover, there are suitable methods to bring into the record any error or impropriety which counsel feel had an adverse affect on his client's right to a fair trial. I believe it is misleading to indicate that there are some areas of review that are beyond our scope.