## Commonwealth v. Harvey

*J. Wesley Rowden, assistant district attorney,* for Commonwealth.

*Donald E. Lewis,* for defendant.

MILLER, *P.J.,* September 15, 1994—We now dispose of the defendant's post-sentence motion for judgment of acquittal. Pa.R.Crim.P. 1124(a)(6), 1410.B. After trial

before a jury, this defendant was convicted of rape by threat of forcible compulsion (18 Pa.C.S. §3121(2)) and simple assault (18 Pa.C.S. §2701(a)(1)) on Karen Beck.[1] In his post-trial motion, the defendant challenges the sufficiency of the evidence to support his rape conviction. 18 Pa.C.S. §3121 provides:

"A person commits a felony of the first degree when he engages in sexual intercourse with another person not his spouse:

"(1) by forcible compulsion;

"(2) by threat of forcible compulsion that would prevent resistance by a person of reasonable resolution;

"(3) who is unconscious; or

"(4) who is so mentally deranged or deficient that such person is incapable of consent."

The defendant argues that the Commonwealth presented no evidence that there was any threat of forcible compulsion in connection with his sexual intercourse with the complainant. As threat of forcible compulsion is an element of the crime of which the defendant was convicted, he argues that he is entitled to a judgment of acquittal as a matter of law.

We are required to view the evidence in the light most favorable to the Commonwealth, as the verdict winner, accept as true all evidence and reasonable inferences upon which, if believed, the jury could have based its verdict, and determine if such evidence and inferences are sufficient in law to prove guilt beyond

---

1. The defendant was also charged with rape by forcible compulsion (18 Pa.C.S. §312(1)), rape by intercourse with an unconscious person (18 Pa.C.S. §3121(3)), and aggravated indecent assault (18 Pa.C.S. §3125(3)). The defendant was found not guilty of rape by forcible compulsion, and the other charges were dismissed by this court prior to submission to the jury.

a reasonable doubt. *Commonwealth v. Rhodes,* 510 Pa. 537, 539, 510 A.2d 1217, 1218 (1986); *Commonwealth v. Davis,* 491 Pa. 363, 421 A.2d 179 (1980).

"Normally, the evidence is deemed to be sufficient where there is testimony offered to establish each material element of the crime charged and to prove commission of the offense by the accused beyond a reasonable doubt. The question of credibility is left to the jury and the verdict will not be disturbed if the jury determines the evidence is worthy of belief." *Commonwealth v. Karkaria,* 533 Pa. 412, 419, 625 A.2d 1167, 1170 (1993). The testimony of the alleged rape victim in and of itself may be sufficient to support a conviction. *Commonwealth v. Gabrielson,* 370 Pa. Super. 271, 536 A.2d 401(1988), *alloc. denied,* 518 Pa. 635, 542 A.2d 1365 (1988); *Commonwealth v. Westcott,* 362 Pa. Super. 176, 523 A.2d 1140 (1987).

The incident in question occurred on the evening of November 19, 1993. On that date, the defendant and the complainant were residing together in Meadville, Pennsylvania. The defendant came home about 11:20 p.m. with a six-pack of beer. (Transcript of Karen Beck's testimony, 5/16/94, p. 4.) Ms. Beck was pretending to be asleep, testifying that due to an altercation with the defendant the previous night, she wanted to avoid any further altercations. (Tr. 4.) Nonetheless, she got up when the defendant came home, accepted a beer that was offered to her, and went into the other room to play cards. (Tr. 5.)

At some point shortly thereafter, the defendant became very angry with Ms. Beck and administered a severe beating to her. (Tr. 5-13.) Photos taken a few days later and entered into evidence showed extensive bruises on the complainant's face, arms and legs. (Tr. 21, 23-26, 32.) The beating went on for some time,

and the complainant feared for her life. (Tr. 11.) The defendant physically prevented the complainant from leaving the bedroom. (Tr. 12.) Out of fear of continued beating, the complainant decided to pretend to pass out. She fell backwards on the bed and feigned unconsciousness. (Tr. 13.)

The defendant stopped beating the complainant when it appeared she had passed out. He checked her pulse, and expressed concern for her well-being. (Tr. 13, 14.) He took the rollers out of her hair and brushed it. (Tr. 13.) The complainant continued to feign unconsciousness.

At some point, the defendant took off the complainant's pajamas and panties and had sexual intercourse with her. (Tr. 13.) The testimony did not clearly establish the amount of time which elapsed between the point where the beating stopped and the sexual intercourse began. The period appears to have been relatively short. The defendant did not leave the room, and the complainant never showed signs of consciousness. Ms. Beck testified that all that transpired during that interval was the defendant checked her pulse, made some attempts to revive her, and brushed her hair for a short while. (Tr. 13, 14.)

After this act of sexual intercourse, the defendant went into the bathroom for approximately 15 minutes. (Tr. 14.) The complainant was afraid to try to leave, as her only way out was past the bathroom. (Tr. 15.) When the defendant came back out, he again tried to revive the complainant. Failing to do so, he had sex with the complainant again. (Tr. 15, 16.) The complainant continued to show no signs of consciousness. (Tr. 15.)

The defendant asks us to find that there was no evidence of any connection between the physical assault

and the sexual intercourse. The defendant concedes that the complainant was a victim of simple assault, but maintains that there was no threat of violence in connection with any desire to have sexual intercourse. Clearly, no evidence was adduced that showed any actual, verbal threat of violence while the defendant had sex with the complainant.

The force necessary to support a conviction for rape need only be such as to establish lack of consent and to induce the victim to submit without additional resistance; the degree of force required to constitute rape is relative and depends on the facts and particular circumstances of the case. *Commonwealth v. Rhodes, supra* at 554, 510 A.2d at 1226; *Commonwealth v. Ables,* 404 Pa. Super. 169, 177, 590 A.2d 334, 337 (1991); *Commonwealth v. Dorman,* 377 Pa. Super. 419, 423, 547 A.2d 757, 758 (1988); *Commonwealth v. Williams,* 294 Pa. Super 93, 97, 439 A.2d 765, 768 (1982); *Commonwealth v. Rough,* 275 Pa. Super 50, 418 A.2d 605 (1980). This standard applies whether the rape is premised upon actual forcible compulsion (section 3121(1)) or upon threat of forcible compulsion (section 3121(2)). As to application of the standard to cases of threats of forcible compulsion, see *Commonwealth v. Williams, supra; Commonwealth v. King,* 290 Pa. Super 563, 570, 434 A.2d 1294, 1297 (1981).

The question before us is whether a physical assault occurring shortly before sexual intercourse, but unrelated to any desire to have sex, can give rise to an implied threat that failure to submit to sexual intercourse will result in further physical abuse. If the physical assault did not influence the complainant's decision to allow the defendant to have intercourse with her, then the defendant could not be convicted of rape. Alternatively, if the complainant acquiesced in the sexual

relations out of fears generated by the earlier assault, then she did not "consent" to the sexual intercourse.

The complainant originally feigned unconsciousness in the hopes of sparing herself from further physical abuse. She continued to pretend to be unconscious as the defendant had vaginal intercourse with her. The jury could reasonably have inferred that her continued feigned unconsciousness was out of fear of further physical abuse. We must accept this inference as true. It is a small logical step to find that the complainant submitted to the sexual intercourse out of fear of further physical abuse. We find this situation to be within the contemplation of 18 Pa.C.S. §3121(2).

Our Supreme Court recently made explicit that the term "forcible compulsion" under 18 Pa.C.S. §3121 means "something more than lack of consent." *Commonwealth v. Berkowitz,* 537 Pa. 143, 150, 641 A.2d 1161, 1165 (1994). In *Berkowitz,* the relevant facts were set forth as follows:

"The complainant, a female college student, left her class, went to her dormitory room where she drank a martini, and then went to a lounge to await her boyfriend. When her boyfriend failed to appear, she went to another dormitory to find a friend, Earl Hassel. She knocked on the door, but received no answer. She tried the doorknob and, finding it unlocked, entered the room and discovered a man sleeping on the bed. The complainant originally believed the man to be Hassel, but it turned out to be Hassel's roommate, appellee. Appellee asked her to stay for a while and she agreed. He requested a back rub and she declined. He suggested that she sit on the bed, but she declined and sat on the floor.

Appellee then moved to the floor beside her, lifted up her shirt and bra and massaged her breasts. He then unfastened his pants and unsuccessfully attempted to

put his penis in her mouth. They both stood up, and he locked the door. He returned to push her onto the bed, and removed her undergarments from one leg. He then penetrated her vagina with his penis. After withdrawing, and ejaculating on her stomach, he stated, 'Wow, I guess we just got carried away,' to which she responded, 'No, we didn't get carried away, you got carried away.' " *Id.* at 146-47, 641 A.2d at 1163.

The Supreme Court reversed the rape conviction, finding that the foregoing facts contained no evidence of forcible compulsion, actual or threatened. The court considered the complainant's testimony that she stated "No" throughout the encounter, but found such fact to be irrelevant to the issue of force. The court repeated with approval the above quoted proposition that "[t]he force necessary to support a conviction of rape ... need only be such as to establish lack of consent and to induce the [victim] to submit without additional resistance. ..." *Id.* at 148, 641 A.2d at 1163. But the court went on to find that the term "forcible compulsion" under section 3121 must "be interpreted as something more than a lack of consent." *Id.* at 150, 641 A.2d at 1165.[2]

_____

2. The Supreme Court's opinion in *Berkowitz* does not make clear whether it was considering the defendant's conviction under section 3121(1) or section 3121(2). It is clear that the court was not concerned with subsections (3) or (4). By interpreting the term "forcible compulsion" and repeatedly saying that it was doing so under section 3121 generally, we find that the court was interpreting that term for purposes of both subsections 3121(1) and (2). At the Superior Court level, the circumstances in *Berkowitz* were analyzed to determine whether the intercourse was accomplished by either mental coercion or threat of forcible compulsion. Both of these suggestions were rejected relatively hastily, and the Superior Court spent the majority of its opinion on the issue of whether there was evidence of actual force in connection with the intercourse.

While at first glance, the two preceding quotes from *Berkowitz* appear contradictory, a closer consideration shows that they are reconcilable. The two propositions address different questions. If the issue is whether there was force, actual or threatened, then a lack of consent would have no bearing on such a determination. If, on the other hand there was force, and the issue is whether there was sufficient force, actual or threatened, to constitute rape, then a lack of consent remains crucial to such a determination.

*Berkowitz, supra,* is not very different from the decision reached by the Superior Court some 11 years earlier. In *Commonwealth v. Biggs,* 320 Pa. Super. 265, 467 A.2d 31 (1983), the Superior Court reversed a rape conviction because there was no evidence that the intercourse was accomplished by threat of forcible compulsion. The defendant had sex with his daughter by coercing her through references to the Bible and telling her that he would show people nude pictures he had taken of her. "The crux of the offense of rape is force and lack of the victim's consent ... We cannot ignore the clear import of the language of section 3121 by upholding, defendant's conviction in the absence of any evidence that [the victim] submitted to intercourse out of fear of an exercise of force by her father." *Id.* at 268, 467 A.2d at 32. (citation omitted)

In the instant case, there was violent force used on the night in question, and Ms. Beck testified that she submitted out of fear of force by the defendant. We cannot say, as a matter of law, that the violent beating administered several minutes prior to the sexual intercourse had no bearing on her lack of resistance to the sexual act. "Whether a threat of force has overcome a victim's will to resist is a question for the jury to determine." *Commonwealth v. Poindexter,* 372 Pa. Su-

per. 566, 574, 539 A.2d 1341, 1344 (1989); see also, *Commonwealth v. Williams, supra* at 99-100, 439 A.2d at 768. (It is a jury question whether the complainant's decision that it was pointless to physically resist amounts to consent.)

It was because of the violent beating that Ms. Beck was feigning unconsciousness. She was feigning that same unconsciousness when the defendant had intercourse with her. This provides a sufficient link between the beating and the act of sexual intercourse to allow the jury to infer that the only reason she did not resist the sexual intercourse was because she feared further physical violence. She thus submitted under the implied threat of forcible compulsion, and the defendant was properly convicted under 18 Pa.C.S. §3121(2). Under the language of *Berkowitz*, the prior assault upon the complainant provides that "something more" than lack of consent for a finding of a threat of forcible compulsion.

Although we have found no Pennsylvania case is sufficiently analogous to the instant case so as to control our decision, language from several appellate decisions provide additional support for sustaining the defendant's conviction.

The Supreme Court provided its most detailed interpretation of 18 Pa.C.S. §3121(1) and (2) in *Commonwealth v. Rhodes, supra.* In that case, the defendant led an 8 year old neighbor to an abandoned building, and took her upstairs to a dirty, unfurnished room on the second floor. He instructed the girl to lay down and pull her legs up. The defendant then got on top of the girl and touched her "butt" with "something" in his pubic area. The victim felt pain and told the defendant to stop. After a short while, the defendant got up and left the building with the victim, who then

walked home. Medical evidence showed that the defendant had penetrated the victim.

The defendant was charged with several sexual offenses, and found guilty following a non-jury trial. On appeal, the Superior Court reversed the defendant's rape conviction finding insufficient evidence that intercourse was achieved through forcible compulsion or threat of forcible compulsion, or that the child was unconscious or mentally deficient. (The defendant had been charged under all four categories of rape. See text of 18 Pa.C.S. §3121(1)-(4), *supra*.) The Supreme Court reversed and reinstated the defendant's conviction under 18 Pa.C.S. §3121(1), (2) and (4).

The Supreme Court reviewed the history of sexual offenses under prior criminal law, the Model Penal Code, and under the current Crimes Code. It also analyzed the dictionary definitions of the plain language of section 3121. The court concluded that " 'forcible compulsion' as used in section 3121(1) includes not only physical force or violence but also moral, psychological or intellectual force used to compel a person to engage in sexual intercourse against that person's will." *Id.* at 555, 510 A.2d at 1226.

The court continued:

"Closely related to section 3121(1) is section 3121(2) which applies to the situation where 'forcible compulsion' is not actually used but is threatened. That section uses the phrase 'by threat of forcible compulsion that would prevent resistance by a person of reasonable resolution.'

"... By use of the phrase 'person of reasonable resolution,' the legislature introduced an objective standard regarding the use of *threats* of forcible compulsion to prevent resistance (as opposed to actual application of 'forcible compulsion')."

"The determination of whether there is sufficient evidence to demonstrate beyond a reasonable doubt that an accused engaged in sexual intercourse by forcible compulsion, ... or threat of such compulsion ... is, of course, a determination that will be made in each case based upon the totality of the circumstances that have been presented to the fact finder. Significant factors to be weighed in that determination would include the respective ages of the victim and the accused, the respective mental and physical conditions of the victim and the accused, the atmosphere and physical setting in which the incident was alleged to have taken place, the extent to which the accused may have been in a position of authority, domination or custodial control over the victim, and whether the victim was under duress. This list of possible factors is by no means *exclusive*." *Id.* at 555-56, 510 A.2d at 1226. (emphasis in original)

The *Rhodes* court specifically refused to set forth all of the possible circumstances that might tend to demonstrate that intercourse was by forcible compulsion or threat of forcible compulsion, leaving such delineation to "evolve in the best tradition of the common law—by development of a body of case law. . . ." *Id.* The ultimate task for the fact finder is to determine whether the victim was forced to engage in sexual intercourse against her will. *Id.* at 556-57, 510 A.2d at 1227.

*Commonwealth v. Gabrielson, supra,* is instructive in its application of certain of the factors enumerated in *Rhodes, supra.* In *Gabrielson,* the defendant drove the victim to an isolated, wooded area, and under threats of a physical beating, he forced the victim to have sex with him:

"We are convinced that ... the atmosphere and physical setting were such that [the victim] was unable to obtain assistance or to escape. Appellant's threats to harm her, his actual prevention of her escape from the jeep and his forcing her to have intercourse with him in a desolate area manifests his domination and control of her. Moreover, [the victim's] testimony that she was afraid that appellant would hurt her if she did not have intercourse is indicative that she acted under duress." *Id.* at 284-85, 536 A.2d at 407. The court sustained the defendant's rape conviction.

Consideration of the factors set forth in *Rhodes* also favors upholding the instant conviction. While the respective ages and mental conditions of the victim and the accused do not weigh one way or the other, the physical condition of the victim was such that the defendant was repeatedly checking her for signs of life, and pictures taken several days after the incident still showed her with serious bruises on her face, arms and legs. The atmosphere and physical setting of the incident was one where the violent beating had just been administered, and the complainant was not in a position to obtain assistance or to escape. The defendant physically prevented the complainant from leaving the room. The beating also manifests the physical domination that the defendant maintained over the complainant, at least at the time of the incident. Finally, the complainant's testimony that she feared for her life clearly shows that she acted under duress. All of the foregoing factors support the jury's finding that the prior physical assault amounted to or gave rise to an implied threat of forcible compulsion sufficient to. sustain the defendant's rape conviction.

We have little difficulty grounding our finding of an implied threat of force on the prior physical assault

of the complainant. In *Commonwealth v. Stambaugh,* 355 Pa. Super. 73, 512 A.2d 1216 (1986), prior violence by the defendant against the victim was relied upon to establish that intercourse was engaged in by forcible compulsion or threat of forcible compulsion. In that case, the defendant's relationship with his 14 year old stepdaughter manifested a pattern of continuing, physical abuse. Numerous incidents of such abuse were introduced through testimony. The court found that the continuing physical abuse compelled the stepdaughter to encase in sexual intercourse with the defendant over approximately a two year period.

"The complainant testified that the appellant 'hit' her 'lots of times,' and that he would do so if she refused to have sex. ... She also stated that he threatened to hit her and that she submitted because she 'was scared.' . . . The complainant's past experience with her step-father and his threats of physical force prevented the complainant's resistance; she reasonably chose intercourse to the beating she would have suffered at the hands of the appellant. The complainant's testimony is unquestionably sufficient to prove beyond a reasonable doubt the element of forcible compulsion or the threat of forcible compulsion." *Id.* at 77-78, 512 A.2d at 1218.

It is not clear from the *Stambaugh* decision whether the sexual relations with the victim were accompanied by present threats of violence, or whether the court was looking solely to the past history of physical abuse in implying a threat of violence in connection with the sexual intercourse. We have discovered no case in Pennsylvania which has squarely addressed whether a past episode of physical violence can amount to or give rise to an implied threat of forcible compulsion to sexual intercourse. The interpretations of forcible

compulsion focus on whether the degree of force utilized is of such a degree as to establish lack of consent and to induce the victim to submit without additional resistance. *Rhodes, supra,* approved in *Berkowitz, supra.* Combining this with the proposition that it is for the jury to determine whether a threat of force has overcome a victim's will to resist, *Poindexter, supra,* compels us to accept the jury's determination that the episode of physical violence, occurring shortly before sexual relations, overcame the complainant's will to resist the sexual relations.

Although we have not found analogous cases in Pennsylvania, we are encouraged that courts of other jurisdictions have upheld convictions under similar circumstances. We recognize that there are great variances among the rape statutes and sexual offense statutes of the various states. Nonetheless, courts faced with the question of whether to sustain convictions for offenses defined as sexual intercourse by force or threat of force have upheld convictions where the threat of force is inferred from a prior physical assault. *State v. Macras,* 588 A.2d 601 (R.I. 1991); *State v. Kulikowski,* 132 N.H. 281, 564 A.2d 439 (1989); *Dolchok v. State,* 763 P.2d 977 (Ak. App. 1988); *State v. Locklear,* 320 N.C. 764, 360 S.E.2d 682 (1987). See also, *Stewart v. State,* 601 N.E.2d 1 (Ind. App. 1992).

We find that a prior physical assault can support a conviction for rape by threat of forcible compulsion. It is for the jury to decide whether the victim submitted out of fear generated by that prior assault, and whether the prior assault would prevent resistance by a person of reasonable resolution. We will not disturb the jury's resolution of these matters.