UNITED STATES of America ex rel. Michael HANRAHAN, Petitioner,

v.

George C. WELBORN and Neil F. Hartigan, Respondents.

No. 84 C 1951.

United States District Court, N.D. Illinois, E.D.

June 22, 1984.

Frederick F. Cohn, Chicago, Ill., for petitioner.

Ellen M. Flaum, Asst. Atty. Gen., Neil F. Hartigan, Ill. Atty. Gen., Chicago, Ill., for respondents.

## MEMORANDUM OPINION AND ORDER

SHADUR, District Judge.

Michael Hanrahan ("Hanrahan" or simply "Michael") petitions for a writ of habeas corpus setting aside his state court sentence. Hanrahan says he was denied effective assistance of counsel at his sentencing hearing due to an alleged conflict of interest on the part of his trial attorney Lawrence Suffredin ("Suffredin")—because Suffredin had, before the sentencing hearing, agreed to represent Hanrahan's codefendant and father Homer Hanrahan ("Homer") on appeal. Respondents (Centralia Correctional Center Warden George Welborn and Illinois Attorney General Neil Hartigan) now move for summary judgment under Fed.R.Civ.P. ("Rule") 56. For the reasons stated in this memorandum opinion and order, that motion is granted and Hanrahan's petition is dismissed.

*Facts* [1]

Michael and his father Homer were charged with the murder, aggravated kidnapping and aggravated battery of Michael's mother (Homer's wife). After a trial at which Michael and Homer were tried jointly but represented by separate counsel, a jury found Michael not guilty of the murder charge but guilty of the second and third charges, while finding Homer guilty of all three charges. Some time after the verdicts and before the sentencing hearing, Michael's attorney Suffredin agreed to represent Homer on appeal and actually filed Homer's notice of appeal.

At the sentencing hearing Michael and Homer continued to be represented by separate counsel (Suffredin acting for Michael, and another lawyer representing Homer). Suffredin presented four witnesses in mitigation on Michael's behalf, including Father James Chereso, a psychiatric social worker who testified (R. 1832) there was "a symbiotic relationship between Michael and his father in which the father dominates. And the result of this is that I don't think Michael has ever found out who he really is as an individual." Suffredin argued (R. 1846):

> [Michael] was the unaggressive member in the actions that led to Marion Hanrahan's death.

> The jury separated him from his father by its verdict, and separated his actions from those that caused part of the occurrence and those that caused the actual death.

At the conclusion of the hearing the trial judge sentenced Michael to concurrent terms of 10 to 25 years for aggravated kidnapping and 3 to 10 years for aggravated battery, and Homer to concurrent sentences of 50 to 100 years for murder, 20 to 40 years for aggravated kidnapping and 3 to 10 years for aggravated battery.

1. This fact statement draws freely from this Court's opinion denying an earlier habeas petition by Michael, *United States ex rel. Hanrahan v. Bosse,* 547 F.Supp. 718, 719 (N.D.Ill.1982), *aff'd by unpublished order,* 723 F.2d 67 (7th Cir.1983). Because the issues posed by the current petition were not ripe for habeas presentation when the earlier case was decided, there is no occasion to consider the general rule against successive habeas petitions. See Rule 9(b) of the Rules following 28 U.S.C. § 2254; *Jones v. Estelle,* 722 F.2d 159 (5th Cir.1983) (en banc).

Both convictions were upheld on appeal. *People v. Hanrahan,* 64 Ill.App.3d 207, 20 Ill.Dec. 866, 380 N.E.2d 1075 (1st Dist. 1978), *cert. denied,* 444 U.S. 828, 100 S.Ct. 53, 62 L.Ed.2d 36 (1979). After certiorari was denied Michael moved pursuant to Ill. Rev.Stat. ch. 38, ¶ 1005–8–1(d) for reduction of sentence before the judge who had sentenced him originally. Although the trial court granted his motion, reducing the sentences to 5 years' probation for aggravated kidnapping and 1 to 10 years for aggravated battery, the Illinois Supreme Court vacated that reduction by writ of mandamus. *People ex rel. Carey v. Collins,* 81 Ill.2d 118, 39 Ill.Dec. 795, 405 N.E.2d 774 (1980).

Shortly thereafter Michael filed a post-conviction petition in the state court, arguing the original sentencing hearing was tainted by Suffredin's simultaneous representation of Michael (for all purposes) and Homer (for purposes of appeal) at that time. That petition was denied, and the denial was upheld by the Appellate Court of Illinois in a November 15, 1982 unpublished order. Having thus exhausted his state remedies, Michael now seeks review of the issue posed by his post-conviction petition.

### Conflicts of Interest: The Constitutional Standard

■ Michael contends Suffredin was burdened by a conflict of interest and thus did not make appropriate arguments in mitigation at the sentencing hearing. Michael suggests that out of concern for the interests of his other client Homer, Suffredin declined to say or show anything damaging about Homer. According to Michael the best argument to make in mitigation would have been to foist as much of the blame as possible on Homer's shoulders, with the consequence that Michael would be seen as less culpable.

There is however an obvious and fatal flaw in that contention: Suffredin did make just such an argument. As the "Facts" section of this opinion indicates, not only did Suffredin argue to the judge that Michael was "the unaggressive member" of the two codefendants, he also deliberately presented a witness in mitigation, Father Chereso, who pointed to a symbiotic relationship between Michael and his father and testified that he believed Michael experienced identity through Homer.

In response Michael falls back to the position Suffredin's argument was not as forceful as it would have been had there been no conflict (Mem. 4–5, citations omitted):

> Not only did defense counsel (burdened by the conflict) not bring forth the evidence forcefully, he failed to make a forceful argument based upon his relationship between the father and the son. His argument was limited to: [quoting Suffredin's argument set forth in the "Facts" section of this opinion]. Such pallid statements are so neutral as to be non-argumentive [sic]. Such argument violates the principle that a lawyer must be an advocate ... and must argue strenuously for leniency.... It was bland. It lacked the thrust that naturally existed because of the situation.

Whether that claimed difference in argument is cognizable by this Court in habeas proceedings depends on controlling Sixth Amendment principles.[2]

■ To establish a violation of the Sixth Amendment caused by his trial counsel's conflict of interest, a defendant who raised no objection at trial must demonstrate "an actual conflict of interest adversely affected his lawyer's performance."[3] *Strickland v. Washington,* ——

---

**2.** Because Michael complains of a state proceeding, he really asserts rights under the Fourteenth Amendment's Due Process Clause and its embodiment of Bill of Rights provisions, rather than under the Bill of Rights directly. Nonetheless it is useful to employ the common reference to the underlying Bill of Rights guaranty.

**3.** On the facts of this case respondents might also urge two other arguments:

1. Michael knowingly and intelligently waived his right to conflict-free representation.

2. There was no actual simultaneous representation by Suffredin of Michael and Ho-

U.S. ——, 104 S.Ct. 2052, 2067, 80 L.Ed.2d 674 (1984), quoting from *Cuyler v. Sullivan,* 446 U.S. 335, 348, 100 S.Ct. 1708, 1718, 64 L.Ed.2d 333 (1980). See *Wilson v. Morris,* 724 F.2d 591, 594 (7th Cir.1984) (en banc).[4] Once such a conflict-caused adverse effect is shown, courts do not inquire (as they do in cases in which incompetence of counsel is alleged) whether that effect was likely to have led to a different result in the criminal proceeding. *Strickland,* 104 S.Ct. at 2067 put it this way:

> Given the obligation of counsel to avoid conflicts of interest and the ability of trial courts to make early inquiry in certain situations likely to give rise to conflicts, see, *e.g.,* Fed.Rule Crim.Proc. 44(c), it is reasonable for the criminal justice system to maintain a fairly rigid rule of presumed prejudice for conflicts of interest.

■ But it is exceedingly plain that the presumption of prejudice does not arise unless counsel's performance has actually suffered because of the conflict—that is the precise sense in which the Supreme Court has spoken of "actual conflict" as contrasted with "possible" or "potential"

conflicts. *Cuyler,* 446 U.S. at 348–50, 100 S.Ct. at 1718–19. It is only when the elements of "actual conflict" (including conflict of interest and adverse effect) are shown that no further showing of prejudice or harmful error is required. See *Foxworth v. Wainwright,* 516 F.2d 1072, 1077 n. 7 (5th Cir.1975).

■ It is a somewhat odd locution to use the term "actual conflict" as though it were limited to a conflict that adversely affects counsel's performance. Conflicts of interest would instead seem to be objectively ascertainable,[5] and in many instances such a conflict is undeniably present regardless of the manner in which the burdened counsel actually comports himself or herself. For example, suppose a single lawyer represents criminal codefendants, and each defendant's sole defense is that the other defendant committed the crime. It would be passing strange to refer to that situation as posing no "actual conflict" solely because the same counsel managed to present each client's defense earnestly and without glaring omissions.[6] Both language and precision of analysis would be

mer, because Suffredin represented Homer only for purposes of appeal.

However neither is an appropriate or necessary ground on which to base this opinion:

1. It is true that in affirming the denial of Michael's post-conviction petition the Illinois Appellate Court said (slip op. at 5) "At the time of the sentencing hearing petitioner knew of and acquiesced in the plans for his attorney to represent both him and his father on appeal." It is also true that such a finding properly made by a state appellate court is entitled to the same presumption of validity as one by a state trial court under 28 U.S.C. § 2254(d). *Sumner v. Mata,* 449 U.S. 539, 546–47, 101 S.Ct. 764, 768–69, 66 L.Ed.2d 722 (1981). But because it is not at all clear whether the Appellate Court's statement was based on a matter focused on by the trial court and the parties, there is some question whether that statement was "a determination after a hearing on the merits of a factual issue." Additional proceedings in this Court might be required to resolve the issue finally.

2. Respondents cite no conflict-of-interest cases in support of the concept that an attorney's representation of one client might be so limited in scope that any possibility of conflict with the representation of another client

for another purpose is foreclosed as a threshold matter. Certainly our Court of Appeals exhibited a strong aversion to any such narrow approach in *Westinghouse Electric Corp. v. Kerr-McGee Corp.,* 580 F.2d 1311, 1316–18 (7th Cir.1978).

4. Though this Court (sitting as a member of the original panel in *Wilson* ) differed with the ultimate en banc application to that case of the principles announced by the Supreme Court in conflict-of-interest cases, the *Wilson* statement of those principles is unexceptionable.

5. American Bar Association Canon 6 (part of the Canons that antedated the Code of Professional Responsibility) put·the standard simply:

> Within the meaning of this canon, a lawyer represents conflicting interests when, in behalf of one client, it is his duty to contend for that which duty to another client requires him to oppose.

6. Like many oversimplified examples, this has its flaws. If the lawyer made inconsistent arguments on behalf of codefendants at a single trial, obvious problems of each defendant's right to a severance would be presented.

256

better served by defining the required showing as twofold:

1. an actual, as opposed to only a potential, conflict of interest

2. that has in fact adversely affected counsel's performance.[7]

Be that as it may, no harm is done so long as it is recognized that the courts' reference to "actual conflict" embraces the ingredient of an actual adverse effect on the lawyer's performance.

■ On the requirements for showing that ingredient, it is notable that *United States v. Mandell*, 525 F.2d 671 (7th Cir. 1975) (per curiam), *cert. denied*, 423 U.S. 1049, 96 S.Ct. 774, 46 L.Ed.2d 637 (1976) requires "actual conflict" to be shown (1) "with a reasonable degree of specificity" (*id.* at 677) and (2) "based on the record and not on mere speculation" (*id.* at 678 n. 12). Although its definition did not divide the "actual conflict" inquiry into its component parts, *Mandell* plainly applied those standards both to the issue whether there was a conflict of interest and to the issue whether the conflict caused an adverse effect on counsel's performance. Thus the dual requirement of *Mandell* should be applied not only to claims of "actual conflict" in general, but also to claims of adverse effect on counsel's performance in particular.

■ There are cogent reasons for such a treatment. Clearly a lawyer's lack of sensitivity to the existence of a conflict does not bar the court's finding there was a real conflict. But the same insensitivity—say the lawyer's lack of an adequate realization that his or her future representation of a codefendant on appeal may be impacted by the current representation of the defendant—actually tends to negate the existence of any adverse effect on the performance of that current representation. Hence the need for the twofold showing required by *Mandell.*

7. That definition would comport with the common usage of the terms "actual conflict of interest" and "potential conflict of interest" in the

Michael's submission here bears neither of those attributes. Only a brief discussion is needed to demonstrate the absence of each element.

As for any "reasonable degree of specificity," Michael's current counsel mistakes what he characterizes as "forceful" arguments for the real standard of *effective* arguments. Advocates differ widely in their styles, and some of the most effective of them are notable for their low-key (perhaps non-"forceful") presentations. If our court system is sometimes swayed by bombast and dramatics more than facts and equities, that is a weakness not a strength, and it should not be institutionalized in the law of conflicts of interest. It must be remembered the proceeding at issue was a sentencing hearing by the court, not a jury trial. Argumentative style may well have been less effective in that situation. But all this is really beside the mark. What is critical is whether a specific difference in behavior has been reasonably demonstrated—and of that there is really no hint other than current counsel's own rhetoric.

As for a showing of different behavior "based on the record and not on mere speculation," none of Michael's three hearings established that:

1. On the contrary, the record of the sentencing hearing shows Suffredin made the very argument now urged, and a witness in mitigation was presented to support it. While a different case would have been presented had Suffredin "withheld from the court ... factors in mitigation which would have benefited [Michael], but prejudiced [Homer]" (*United States v. Mavrick*, 601 F.2d 921, 931 (7th Cir.1979)), no such showing has been made.

2. At resentencing the trial judge did reduce Michael's sentence (the reduction later reversed by the Illinois Supreme Court's writ of mandamus). But in doing so the judge cited Michael's behavior after his original sentencing, such as his

law of professional responsibility as well as in everyday language. And see n. 5.

return to college, rather than events that could have been considered at the initial sentencing.

3. Suffredin's testimony at the post-conviction petition hearing really does not constitute a record showing of an adverse effect on his performance. While Suffredin admitted he made an argument for leniency in a different, more effective form at resentencing in 1979 than he did in sentencing in 1976 (R. 13),[8] and while Suffredin repented by saying he would not subject himself to such a conflict again (R. 15), he also testified he did not feel at the 1976 hearing he was operating under a conflict of interest (R. 9). So far as Suffredin was concerned, in 1976 he really believed, and conducted himself as though, Michael was his only client—a concept that underpins the lack of any difference in his handling. In fact the trial judge concluded at the post-conviction hearing (R. 51):

> Both defendants were charged with murder, conceivably could have been both convicted of murder, but the jury was very perceptive and saw that there was a difference even though they were acting in concert, there was a difference between the father and the son, and they did not find the son guilty of murder.
>
> Perhaps, perhaps I missed that perceptiveness at the sentencing, but it was not anything to be attributed to Mr. Suffredin.
>
> He did an excellent job in presenting everything he could on behalf of his client and his client, I mean Michael, and I can see nothing that would warrant this Court in doing anything further.

Thus Michael's claim of any difference in Suffredin's behavior rests on nothing more than speculation.[9]

This case cannot be distinguished from *United States v. Mavrick*, 601 F.2d at 931–32 in any way favorable to Michael. In *Mavrick* defendant claimed a conflict of interest at sentencing arising from counsel's joint representation of defendant and his codefendant, who had confessed while defendant maintained his innocence. Defendant argued his attorney should have tried to pin the blame on the confessing codefendant, but did not because of his loyalty to the codefendant. Our Court of Appeals was "unable to conclude that defense counsel's efforts were inhibited or impaired by the dual representation" (*id.* at 931). Defendant actually got a heavier sentence than his codefendant because (*id.* at 931 n. 11) he had not "taken that first step towards rehabilitation" by admitting his guilt. But there was "no reason to believe that such a comparison would not have been made had the defendants been separately represented" (*id.* at 931).[10]

---

**8.** All lawyers know the story of the three appellate arguments: the one initially prepared, the one actually made and the one the lawyer thinks about on the way back to the office. All of us, given a second chance to attack an issue, should have learned something from the first effort that would enable us to improve the second. But that is a long way from saying Suffredin's first effort would have been more effective had he been keenly aware of the conflict of interest created by his agreement to represent Homer in a future appeal.

**9.** Though Michael's current counsel does not recognize the impact of his own characterization, he essentially gives the issue away by asserting Suffredin was affected "subliminally" (Mem. 3). That is really the epitome of a truly speculative difference in behavior, which *Mandell* rejects.

**10.** Michael invokes *Commonwealth v. Knight*, 245 Pa.Super. 337, 369 A.2d 431 (1976) and *Commonwealth v. Cullen*, 216 Pa.Super. 23, 260 A.2d 818 (1969) as persuasive precedent in support of his claim of an actual conflict. *Mavrick* however is much closer to this case. In both *Knight* and *Cullen* two defendants were represented by a single attorney at sentencing. In *Knight* the complaining defendant obtained relief because his attorney had argued he was the more culpable defendant. In *Cullen* the complaining defendant obtained relief because his attorney had concentrated on factors in mitigation of his codefendant's sentence rather than his own. Both those arguments might have been available to Homer if he were not separately represented at sentencing, but they are surely not available to Michael where Suffredin actually argued more strongly for leniency toward Michael than toward Homer.

*Conclusion*

Michael has shown no basis for inferring his lawyer's conduct was adversely affected by an actual conflict of interest, thus tainting his state court sentencing. There is no genuine issue of material fact, nor is an evidentiary hearing required.[11] Respondents' motion for summary judgment is granted, and Michael Hanrahan's petition is dismissed with prejudice.

---

**11.** See Rule 8(a) of the Rules following 28 U.S.C. § 2254.