UNITED STATES of America ex rel. Michael HANRAHAN, Petitioner,

v.

Richard GRAMLEY, Respondent.

No. 86 C 5254.

United States District Court, N.D. Illinois, E.D.

June 29, 1987.

Shelly B. Kulwin, Chicago, Ill., for petitioner.

Terence M. Madsen, Asst. Atty. Gen., Chicago, Ill., for respondent.

## MEMORANDUM OPINION AND ORDER

SHADUR, District Judge.

Michael Hanrahan ("Hanrahan" or simply "Michael") has filed a Verified Amended Petition ("Petition III") for a writ of habeas corpus under 28 U.S.C. § 2254 ("Section 2254") against Warden Richard E. Gramley ("Gramley") of East Moline Correctional Center. Gramley now moves

to dismiss Petition III.[1] For the reasons stated in this memorandum opinion and order, the motion is granted and Petition III is dismissed.

### Facts [2]

Michael and his father Homer Hanrahan ("Homer") were charged with the murder, aggravated kidnapping and aggravated battery of Michael's mother (Homer's wife). Michael and Homer were tried jointly but each retained his own counsel: Lawrence Suffredin ("Suffredin") represented Michael, while George Downs ("Downs") represented Homer. On May 3, 1978 the Hanrahans appeared before Judge Wayne Olson for a pretrial hearing relating to three motions filed on their behalf (P. 1):

   1. a motion to suppress certain evidence and statements;

   2. a motion to quash their arrests; and

   3. a motion to sever the trial.

Before conducting the hearing Judge Olson allegedly solicited a bribe from the Hanrahans' attorneys, saying he would issue favorable rulings on the motions if paid $40,000 (*id.*). When Michael refused to make the payment, he and Homer were told Judge Olson "was upset that an agreement could not be reached" (*id.*). Judge Olson later denied all three motions (*id.*).

Assistant State's Attorney George Pappas ("Pappas") was extensively involved in the investigation of the Hanrahans' case (P. 3).[3] Pappas also testified during the suppression hearing (*id.*). Before voir dire for the trial (over which Judge Robert J. Collins presided), defense counsel moved for Pappas' withdrawal as prosecutor in the case on the ground he could be called as witness in the trial (P. 3–4). When Pappas refused to withdraw, the defense moved for a court order requiring him to do so (P. 4). That motion was denied based on the "prosecutor's assurances Pappas would not testify for the State" (*id.*).[4]

Pappas did not take the stand during the trial to testify for the State (*id.*). However, he mentioned his involvement in the case during his opening statement, causing Judge Collins to stop him and say it was "unwise" for Pappas to discuss his "in-

---

**1.** On August 23, 1985 Hanrahan filed his original pro se petition in this action in the United States District Court for the Central District of Illinois. Gramley filed a motion to dismiss the petition on procedural grounds, apparently under Rule 4 of the Rules Governing Section 2254 Cases in the United States District Courts (all further citations to those Rules will simply take the form ("Rule—.")). Rule 4 provides in part (emphasis added):

   The petition shall be examined promptly by the judge to whom it is assigned. If it plainly appears from the face of the petition and any exhibits annexed to it that the petitioner is not entitled to relief in the district court, the judge shall make an order for its summary dismissal and cause the petitioner to be notified. Otherwise the judge shall order the respondent to file an answer or other pleading within the period of time fixed by the court *or to take such other action as the judge deems appropriate.*

Advisory Committee Notes to Rule 4 explain "such other action" may include authorizing the respondent to make a motion to dismiss on procedural grounds, thus avoiding the need to file an answer on the substantive merits of the petition. After Gramley's motion had been fully briefed, the case was transferred to this District (and to this Court's calendar). This Court promptly appointed Shelly B. Kulwin, Esq. to represent Hanrahan. After Mr. Kulwin then filed an amended petition (Petition III), Gramley renewed his motion to dismiss, submitting a "supplemental" memorandum ("Gramley Mem.") in support of the motion. Hanrahan's memorandum in opposition to the motion will be cited "Hanrahan Mem."

**2.** Because Gramley's motion is for dismissal (and thus challenges only the legal sufficiency of Petition III), this opinion accepts as true Hanrahan's well-pleaded factual allegations. Because Petition III is written in narrative style rather than being divided into numbered paragraphs, it will be cited "P.—" (reflecting the page number on which the allegation appears).

**3.** Petition III says Pappas (P. 3):

   1. gave orders to the police to open the trunk of Homer's car, where the victim's body was found;

   2. was present during interviews with Michael and when Michael confessed;

   3. discussed the case with Assistant State's Attorney DiVito before the interviews; and

   4. sent a history of the case to the pathologist, Dr. Choi, before Choi performed the victim's autopsy.

**4.** It is not clear whether that sentence refers to assurances by Pappas or perhaps by a co-prosecutor.

volvement" in the case (*id.*). Pappas later referred to himself as Assistant State's Attorney rather than by name and was again admonished by the Judge, but "the references continued" (*id.*).

At the end of the trial the jury found Michael not guilty of the murder charge but guilty of the second and third charges.[5] Some time before the sentencing hearing Suffredin agreed to represent Homer as well as Michael on appeal, and he actually filed Homer's notice of appeal. In the meantime, however, Michael and Homer continued to be represented by separate counsel at the sentencing hearing—Suffredin representing Michael. Judge Collins sentenced Michael to concurrent terms of 10 to 25 years for aggravated kidnapping and 3 to 10 years for aggravated battery.

### Post-Trial Developments

In the direct appeal of their convictions (*People v. Hanrahan,* 64 Ill.App.3d 207, 20 Ill.Dec. 866, 380 N.E.2d 1075 (1st Dist. 1978), *cert. denied,* 444 U.S. 828, 100 S.Ct. 53, 62 L.Ed.2d 36 (1979)) the Hanrahans challenged Judge Olson's denial of their pretrial motions. First they urged Michael's arrest was without probable cause, so that Judge Olson had erred in denying the motions to quash the arrests and suppress certain evidence and statements (*id.* at 213, 380 N.E.2d at 1080). In rejecting that argument the court said (*id.* at 213–14, 20 Ill.Dec. at 871, 380 N.E.2d at 1080):

> We disagree. In Illinois, a police officer may arrest a person when he has reasonable grounds to believe that the person is committing or has committed an offense. (Ill.Rev.Stat.1977, ch. 38, par. 107–2(c).) Further, the test for reasonableness of the officer's belief is whether a reasonable and prudent man in the officer's position and in possession of his knowledge would believe that the person arrested committed the offense. (*People v. Garza* (1976), 44 Ill.App.3d 30, 2 Ill.Dec. 821, 357 N.E.2d 1264.) Under the facts of the present case, the police officers had reasonable grounds to believe that defendant Michael Hanrahan was guilty of battery to his mother.

> Mary Ellen Hanrahan told police officers that on the night of November 20, 1974, she heard an argument between the deceased and the defendants. She also observed blood on the defendants and heard her mother moan, "It hurts, it hurts." She stated that she was refused access to the deceased and was told by defendant Michael that he had hit her in the face. The next day, the deceased was gone and so were her bed sheets and covers. When police arrived at the Hanrahan home, they discovered blood in the basement and also on the mattress cover of the deceased's bed. Consequently, we believe these facts established reasonable grounds to cause a reasonable and prudent man to believe that defendant Michael Hanrahan had committed battery to his mother. His arrest was therefore lawful.

Homer also asserted Judge Olson should have granted the motion to sever the trial, based upon incriminating statements Michael had given (*id.*). That contention was also found wanting (*id.* at 214–15, 20 Ill. Dec. at 871–72, 380 N.E.2d at 1080–81):

> In support of his contention that his motion to sever should have been granted, he cites *Bruton v. U.S.* (1968), 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476.

> The present case is not analogous to the facts in *Bruton.* In *Bruton,* two defendants were tried jointly and the confession of one defendant, in which he implicated his co-defendant who had not confessed, was admitted. Neither defendant testified at trial. Consequently, the Supreme Court held that the co-defendant who had not confessed was denied the right to confront his accuser. Here, however, both defendants made statements to the police that were later introduced at trial. While defendant Michael's statement was more detailed than defendant Homer's, both statements were substantially similar. In fact, in the course of a conversation with Mr. DiVito and after having been given his rights, defendant

---

5. Homer was found guilty of all three charges.

Homer said "Blame it all on me. I did it, my son was not involved." Further, during the trial defendant Homer even consented to the introduction of defendant Michael's statement into evidence, as long as the jury was properly instructed, which they were, on several occasions.

\* \* \* \* \* \*

We believe the rationale of [*People v.*] *Rosochacki* [, 41 Ill.2d 483, 244 N.E.2d 136 (1969) ] is controlling here and therefore conclude that the trial court correctly denied defendant Homer Hanrahan's motion for severance.

Finally the Hanrahans asserted several errors were committed during the actual trial. Of those, only the ones relating to Pappas are relevant here. Hanrahans argued Judge Collins should not have allowed Pappas to act as prosecutor in the case because he had participated in the investigation, so that mention of Pappas' name during the trial had prejudiced their case (*id.* at 216, 20 Ill.Dec. at 873, 380 N.E.2d at 1082). Again the Court rejected that ground for appeal (*id.*):

> While there is little case law on the issue, we believe that the trial court properly ruled that Mr. Pappas could act as the prosecutor in this case. His role during the investigation of this case was relatively minor. Almost all of the investigatory work, particularly the questioning of the defendants and witnesses, was handled by other assistant State's attorneys or police officers. Although Mr. Pappas testified at the motion to suppress hearing, he never testified at trial. Only once during opening statements did he mention his involvement in the case, for which he was quickly admonished by the court. Consequently, we fail to see how the defendants were in any way prejudiced by Mr. Pappas acting as prosecutor in this case. See *People v. Bis-*

*sonnette* (1974), 20 Ill.App.3d 970, 313 N.E.2d 646.

After certiorari was denied Michael moved for reduction of his sentence. Although Judge Collins granted the motion, the Illinois Supreme Court later vacated the reduction by writ of mandamus (*People ex rel. Carey v. Collins*, 81 Ill.2d 118, 39 Ill.Dec. 795, 405 N.E.2d 774 (1980)). Soon after that Michael filed a post-conviction petition in the state court, claiming the original sentencing hearing had been tainted by Suffredin's simultaneous representation of Michael (for all purposes) and Homer (for purposes of appeal). That petition was denied, and the denial was upheld by the Illinois Appellate Court in a November 15, 1982 unpublished order.

While the appeal from the denial of the post-conviction petition was pending, Michael filed his first (pro se) petition for writ of habeas corpus ("Petition I") in this District Court.[6] Petition I advanced two grounds for habeas relief, both of which this Court found without merit in a September 21, 1982 opinion ("Opinion I," *United States ex rel. Hanrahan v. Bosse*, 547 F.Supp. 718 (N.D.Ill.1982), *aff'd by unpublished order*, 723 F.2d 67 (7th Cir.1983)).

Only one of Petition I's grounds for habeas relief is relevant here: its contention that Judge Olson's failure to suppress statements that were the product of an illegal arrest violated the Fourth Amendment.[7] No mention was made of Judge Olson's purported solicitation of a bribe. After reviewing the evidence and the decisions of the state and appellate courts, Opinion I, 547 F.Supp. at 720 held:

> Both the state trial and appellate courts rejected Hanrahan's claim of illegal arrest after a full and fair hearing on the merits. *Stone* [*v. Powell*, 428 U.S. 465, 96 S.Ct. 3037, 49 L.Ed.2d 1067 (1976) ] and its progeny preclude habeas review

---

6. Petition I was assigned to this Court's calendar by random assignment. Because this District Court's General Rule 2.21(d)(1) calls for direct assignment of successive habeas petitions to the same judge rather than by lot, Petitions II and III automatically came to this Court as well.

7. Petition I also charged the writ of mandamus directing vacation of the reduction of sentence was erroneous and deprived Michael of due process and equal protection in violation of the Fourteenth Amendment.

here of the same Fourth Amendment contention.

Between the filing dates of Petition I and Petition II, Judge Olson was indicted in this District Court. That occurred in December 1983, when he was charged with extortion, racketeering and mail fraud in his capacity as a state court judge (Hanrahan Mem. 2).

Michael (represented by Frederick F. Cohn) filed a second petition for writ of habeas corpus ("Petition II") in this Court in 1984, raising issues that had not been ripe for habeas presentation when Petition I was decided.[8] Those new issues still did not, however, include any claim flowing from Judge Olson's alleged solicitation of a bribe. On that score Michael's March 10, 1986 affidavit (pro se petition Ex. 5, ¶ 4) explains:

> In approximately February or March of 1984, I spoke with Robert Freeman, an associate of Frederick F. Cohn, about raising an issue of prejudice in the habeas corpus which was filed with the court, or which was about to be filed. Mr. Freeman stated that he would discuss the matter with Mr. Cohn, he stated that there was no evidence of Wayne Olson's prejudice towards myself, and that nothing could be raised until he was found guilty.

This Court dismissed Petition II in a June 22, 1984 opinion ("Opinion II," *United States ex rel. Hanrahan v. Welborn,* 591

F.Supp. 252 (N.D.Ill.1984), *aff'd by unpublished order,* 774 F.2d 1167, *cert. denied,* — U.S. ——, 106 S.Ct. 891, 88 L.Ed.2d 925 (1986)).

In July 1985 Judge Olson pleaded guilty to the crimes charged in the indictment. Petition III followed.

### Petition III

Petition III raises two grounds for habeas relief:

1. Judge Olson, by failing to rule fairly and impartially on the pretrial motions and by denying the motions because the Hanrahans refused to pay him a $40,000 bribe, violated Michael's Sixth Amendment right to a fair trial and Fifth Amendment right to due process (the "bribery claim") (P. 2).[9]

2. Judge Collins denied Michael his Sixth Amendment right to confront the witnesses against him when he failed to order the prosecutor at trial, George Pappas, to withdraw from the case (the "Confrontation Clause claim") (P. 3).[10]

Gramley contends both claims should be dismissed because their omission from prior petitions was an abuse of the writ of habeas corpus (Rule 9(b)). In addition Gramley argues the bribery claim is waived (and perhaps the Confrontation Clause claim as well) because (1) neither of those claims was raised in the post-conviction pe-

---

8. Petition II alleged Michael had been denied effective assistance of counsel at his sentencing hearing due to Suffredin's alleged conflict of interest. That conflict was allegedly caused by Suffredin's agreement before the sentencing hearing to represent Homer in the direct appeal.

9. As Opinion II, 591 F.Supp. at 254 n. 2 explained:

   Because Michael complains of a state proceeding, he really asserts rights under the Fourteenth Amendment's Due Process Clause and its embodiment of Bill of Rights provisions, rather than under the Bill of Rights directly. Nonetheless it is useful to employ the common reference to the underlying Bill of Rights guaranty.

10. Petition III argues (P. 4);

    [Pappas] became a silent or unsworn witness against [Michael] at trial. He did not literally take the stand and testify, but, by making references to his involvement in the case he was essentially testifying against [Michael].

Therefore, as this unsworn witness, Pappas was not subject to cross examination by the petitioner.

Hanrahan Mem. 5–6 later refers to Michael's "prosecutorial misconduct" claim. Prosecutorial misconduct may constitute a ground for habeas relief if the misconduct "so infected the trial with unfairness as to make the resulting conviction a denial of due process" (*Donnelly v. DeChristoforo,* 416 U.S. 637, 643, 94 S.Ct. 1868, 1871, 40 L.Ed.2d 431 (1974)). Because Petition III does not advance that particular constitutional claim (which, on the facts here, could not be successful anyway), Hanrahan Mem. 5–6 must use the term "prosecutorial misconduct" to refer to the wholly separate Confrontation Clause claim: Pappas' misconduct in making references to his involvement in the case amounted to testimony against Michael and deprived Michael of his right to cross examination.

tition and (2) the *Wainwright v. Sykes*, 433 U.S. 72, 90–91, 97 S.Ct. 2497, 2508–2509, 53 L.Ed.2d 594 (1977) "cause and actual prejudice" standard is not satisfied.

This opinion treats first with the waiver argument. Even though that proves dispositive, this opinion then goes on to treat with the abuse-of-the-writ question.

### Waiver

Hanrahan concedes he did not raise the bribery claim in either his direct appeal or his post-conviction petition. Nonetheless Hanrahan Mem. 1 urges Michael should be excused from that procedural default because he had cause for his default and suffered prejudice from the alleged constitutional violations. Hanrahan Mem. 2 describes Michael's "cause" this way:

> Judge Olson was indicted for extortion, racketeering, and mail fraud charges relating to his bribe taking in December of 1983. Olson's plea of guilty to these charges was not until July of 1985. [Michael] did not become aware of the fact that his fears regarding Judge Olson's conduct on the bench were substantiated by a federal investigation until 1985. Before that time [Michael] stood alone and could not substantiate what he learned by way of hearsay from his attorney. Therefore, [Michael] had absolutely no evidence by which to substantiate such a serious claim.

■ That is nonsense. Michael speaks as though *his* secondhand testimony would have been alone against the world—but the bribe-solicitation claim would rather have rested on direct testimony by Suffredin and Downs, recounting their conversation with Judge Olson before the hearing. That evidence existed in 1978, and Michael knew it. Judge Olson's guilty plea seven years later in an unrelated case undoubtedly made the previously existing available evidence more believable, but it certainly did not provide—for the first time—the "evidence by which to substantiate" Michael's claim.

To put it another way, Michael's "cause" for not advancing the bribery claim in the direct appeal or post-conviction hearing is *not* that he "had absolutely no evidence" to support the claim but rather that he did not think the evidence would be believed. That does not constitute "cause" (in *Wainwright v. Sykes* terms) for Michael's failure to assert the bribery claim in the state courts (cf. *Engle v. Isaac*, 456 U.S. 107, 130, 102 S.Ct. 1558, 1573, 71 L.Ed.2d 783 (1982)).

■ Moreover, a habeas petitioner must have two strings to his bow to refute a waiver defense—both cause *and* prejudice—and Michael lacks that second string as well. As Gramley Mem. 5–6 points out, the Hanrahans challenged Judge Olson's rulings in their direct appeal, albeit without identifying the alleged improper reasons for his denial of the motions. Examination of the Appellate Court's decision reveals that Court reviewed the evidence and arguments *independently*, determining on the merits (that is, as a legal matter viewed de novo) that the motions had been properly denied. Nothing in that decision even hints that the Appellate Court relied on any factual findings or evidentiary rulings by Judge Olson, as Hanrahan Mem. 4 inaccurately suggests.

Besides prejudice in the form of erroneous rulings, Hanrahan Mem. 3 complains:

> The ability to buy a favorable ruling was present. [Michael] complains of the fact that he was confronted with such an opportunity.

But no explanation is given (or can be imagined) as to just how that can constitute "prejudice" in *Wainwright v. Sykes* terms. This Court's habeas jurisdiction confers no general supervisory function over the administration of justice in the state court system.

In sum, because neither erroneous rulings nor an unfair trial flowed from Michael's refusal to pay Judge Olson a bribe, Michael suffered no prejudice from Judge Olson's actions. And because that means there was neither cause for the procedural default nor prejudice from the alleged constitutional violation, this Court dismisses the bribery claim as waived.

■ Gramley Mem. 1 n. 1 also observes the "prosecutor misconduct" issue may have been waived if that issue was not

included in the petition for leave to appeal to the Illinois Supreme Court from the direct appeal.[11] That assumes the issue was raised in the direct appeal. It was not. What Michael argued in the direct appeal was that Judge Collins had erred in permitting Pappas to prosecute the case, noting the mention of Pappas' name during the trial had prejudiced him (64 Ill.App.3d at 216, 20 Ill.Dec. at 873, 380 N.E.2d at 1082).

Petition III raises an entirely different claim: that Pappas' prosecution of the case violated Michael's constitutional right to cross examination. Absolutely no mention was made of *that* contention in the direct appeal. And it is certainly not enough that the Confrontation Clause claim flows from the same prosecutorial conduct as did the claims advanced in the direct appeal. Having failed to challenge that conduct in either the direct appeal or the post-conviction petition as violative of the Confrontation Clause, Michael gave the state courts no opportunity to rule on that particular claim. Accordingly the Confrontation Clause claim too has been waived unless Michael can show cause for his default and prejudice from the alleged constitutional violation. He satisfies neither requirement.

■ Michael suffered no prejudice from the alleged constitutional violation, because the Confrontation Clause claim is meritless. Hanrahan fails to cite a single case in which a prosecutor was found effectively to have "testified" against a defendant and in that way violated that defendant's right to cross-examination. Even if it were assumed such a case might exist (though this Court is not about to do counsel's work for him in that respect), examination of the Illinois Appellate Court's opinion reveals Pappas did not effectively testify against Michael. That opinion (64 Ill.App.3d at 216, 20 Ill.Dec. at 873, 380 N.E.2d at 1082) noted Pappas' role in the investigation had been "relatively minor" and (*id.*):

[o]nly once during opening statements did he mention his involvement in the

case, for which he was quickly admonished by the court.

Because the Confrontation Clause claim is wholly without substantive merit, Michael also cannot establish cause for his failure to assert it in the state courts. That is so because the only potential "cause" this Court can conceive (Hanrahan is silent on the question) is an alleged ineffectiveness of counsel in failing to assert the claim. And it would be a contradiction in terms to find a lawyer incompetent for not having tendered an empty argument to the Appellate Court.

Thus Michael's Confrontation Clause claim suffers the same fate as the bribery claim. It too has been waived.

### Abuse of the Writ

Even had Michael not waived the bribery and Confrontation Clause claims (as he has), his failure to raise those claims in prior habeas petitions constitutes an abuse of the writ. Such abuse is itself a ground for dismissal of those claims under Rule 9(b). As *Robinson v. Fairman*, 704 F.2d 368, 370 (7th Cir.1983) explained, Rule 9(b) incorporates the principle enunciated in *Sanders v. United States*, 373 U.S. 1, 18, 83 S.Ct. 1068, 1078, 10 L.Ed.2d 148 (1963):

[I]f a prisoner deliberately withholds one of two grounds for federal collateral relief at the time of filing his first application, in the hope of being granted two hearings rather than one or for some other such reason, he may be deemed to have waived his right to a hearing on a second application presenting the withheld ground. The same may be true if ... the prisoner deliberately abandons one of his grounds at the first hearing. Nothing in the traditions of habeas corpus requires the federal courts to tolerate needless piecemeal litigation, or to entertain collateral proceedings whose only purpose is to vex, harass, or delay.

■ Once abuse of the writ is raised as a ground for dismissal, the prisoner has the burden of proving by a preponderance

---

**11.** Gramley says he is "attempting to locate" that petition to determine whether the claim has in fact been waived.

of the evidence that he or she has not abused the writ. *Jones v. Estelle*, 722 F.2d 159, 164 (5th Cir.1983), *cert. denied sub nom. Jones v. McKaskle*, 466 U.S. 976, 104 S.Ct. 2356, 80 L.Ed.2d 829 (1984), citing *Price v. Johnston*, 334 U.S. 266, 292, 68 S.Ct. 1049, 1063, 92 L.Ed. 1356 (1948). Where the district court determines as a matter of law that the prisoner cannot justify the omission of the new claims from prior petitions, no evidentiary hearing is required (*id.*).

■ Treating first with the bribery claim, this Court does find as a matter of law that Michael cannot justify omission of that claim from prior petitions. It is undisputed Michael was fully aware of the bribery claim in 1978 when the bribe was allegedly solicited, yet he failed to assert it in either Petition I or II. *Jones*, 722 F.2d at 164 teaches withheld claims are "undoubtedly barred" under such circumstances. Hanrahan Mem. 5 urges that claim should nevertheless be reviewed on the merits because Michael did not have knowledge of all relevant facts when the earlier petitions were filed—and that, allegedly, because Judge Olson had not yet been convicted. That conviction, Hanrahan Mem. 5 continues, "gave rise to a great deal of new factual evidence which could substantiate [Michael's] claim."

Hanrahan is understandably silent as to what that new factual evidence is. As this opinion has already explained, Judge Olson's conviction in *another* case makes Michael's claim more believable, but it does not provide "facts necessary to support the new ground" (*Booker v. Wainwright*, 764 F.2d 1371, 1376 (11th Cir.), *cert. denied,* — U.S. ——, 106 S.Ct. 339, 88 L.Ed.2d 324 (1985)).[12] Critical evidence in Michael's case would be the testimony of Suffredin or Downs, recounting their conversation with Judge Olson. And Hanrahan suggests no reason why the availability of that evidence turned on Judge Olson's conviction.

Indeed, it should be recalled Petition II (though not Petition I) was filed after Judge Olson had already been indicted, though not yet convicted. If any credence *were* to be given to Michael's illogical contention that the availability of more evidence of Judge Olson's cupidity were somehow a precondition to Michael's advancing the bribery claim, the indictment itself showed that enough such evidence existed to have persuaded a grand jury in probable cause terms. But frankly this entire discussion begins with an absurd premise, and it is difficult to build a rational analysis on so hollow a foundation. Michael has simply offered no arguable basis to support his omission of the bribery claim from Petition II.

■ There is one potential legal excuse for such omission Hanrahan could have raised (but did not): ineffective assistance of counsel.[13] Although a state has no constitutional duty to provide counsel in habeas proceedings (so counsel's competence in such a proceeding is not a constitutional inquiry), counsel's ineffectiveness may excuse the omission of a claim from previous petitions (*Jones*, 722 F.2d at 167). In this case Michael's affidavit says he notified his counsel of the bribery claim and asked whether it should be raised in Petition II. Counsel then misinformed him that the claim could not be raised until Judge Olson was convicted.

In determining whether counsel was ineffective, this Court applies the two-part *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984) test:

> First, the defendant must show that counsel's performance was deficient.... Second, the defendant must show that

---

12. Contrary to what Hanrahan Mem. 5 says, the fact of Judge Olson's conviction would be of doubtful admissibility (at best) in Michael's case. See Fed.R.Evid. 404(b) and discussion of that rule in *Woodruff v. Lane*, 818 F.2d 1369, 1371–74 (7th Cir.1987).

13. Hanrahan Mem. 6 offers that excuse for omission of the Confrontation Clause claim only, suggesting such ineffectiveness is shown (among other ways) by counsel's failure to have raised the bribery claim in Petition II.

the deficient performance prejudiced the defense.[14]

*Strickland, id.* at 697, 104 S.Ct. at 2069 and its progeny recognize it often makes sense to prescind the first question and turn directly to the second. That is very much the case here, because the nonprejudice issue is so plain.

■ As *Strickland,* 466 U.S. at 694, 104 S.Ct. at 2068 explained, prejudice exists only when:

> there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.

Even had counsel raised the bribery claim in Petition II, each of three independently sufficient reasons would have caused the denial of habeas relief to Michael:

> 1. waiver (the claim was not raised in the direct appeal or post-conviction petition);
>
> 2. abuse of the writ (the claim was omitted from Petition I); and
>
> 3. lack of a constitutional basis for habeas relief (when the underbrush is cleared away, Michael's ground for relief is really that Judge Olson *properly* denied pretrial motions for improper reasons).

Michael thus suffered no prejudice from the asserted deficiency in counsel's performance during Petition II proceedings. As a matter of law, then, counsel was not ineffective in *Strickland* terms, and there was no justification for omissions of the bribery claim from Petition II.

■ Only the Confrontation Clause claim remains. Hanrahan Mem. 5 urges the omission of that claim from prior peti-

tions was not an abuse of the writ because its omission was due to ineffective assistance of counsel. Of course that purported legal excuse exists only as to Petition II, because Michael represented himself in Petition I proceedings and Hanrahan Mem. 5 proffers no legal excuse for omission of the claim from Petition I.[15]

■ As for the claimed ineffectiveness of counsel in the Petition II proceedings, Hanrahan Mem. 5–6 says:

> The question of prosecutorial misconduct was raised, briefed and decided on appeal in the Illinois Appellate Court. Nevertheless, it was not raised in the first or second habeas corpus petition.... While failure to raise a claim alone does not establish ineffective assistance of counsel, *Jones,* 722 F.2d at p. 167, the fact that it was a constitutional issue that had been raised previously and then was ignored by habeas counsel indicates that [Michael] was ineffectively represented.

That is inaccurate in two respects. First, no constitutional claim (based on either the Confrontation Clause or prosecutorial misconduct) was raised in the direct appeal. Instead Michael argued only that he suffered prejudice because Pappas both investigated and prosecuted his case. Second, even had a Confrontation Clause claim based on Pappas' conduct been advanced in the direct appeal, counsel's failure to raise it in Petition II would not automatically render him "ineffective."

*Gray v. Greer,* 800 F.2d 644, 646 (7th Cir.1986) sets out the test for determining whether counsel was deficient (in *Strick-*

---

**14.** [Footnote by this Court] *Strickland* applied that test in determining whether or not constitutionally-guaranteed *trial* counsel had been ineffective. Though our Court of Appeals has not yet addressed the same question in the habeas context, the Fifth Circuit has applied the same test in examining the purported ineffectiveness of counsel during a habeas proceeding. See *Daniels v. Blackburn,* 763 F.2d 705, 710 (5th Cir.1985); *Jones,* 722 F.2d at 167 & n. 9; *Johnson v. Cabana,* 661 F.Supp. 356 (S.D.Miss.1987)

**15.** Pro se petitions must be examined more liberally than those filed by an attorney, because

pro se applicants are less likely to know all the possible sets of facts that could be a basis for habeas relief (*Booker,* 764 F.2d at 1376, citing the earlier opinion in the same case, 631 F.2d at 51). Nonetheless the omission of claims from pro se petitions is not automatically excused, as Hanrahan seems (by his memorandum's silence on that score) to believe. Where (as here) the omitted claim had already been raised in the direct appeal, and so brought to the attention of the pro se applicant, omission of the claim from his habeas petition would seem especially difficult to justify.

*land* terms) for failing to raise particular claims on direct appeal:

> Significant issues which could have been raised should then be compared to those which were raised. Generally, only when ignored issues are clearly stronger than those presented, will the presumption of effective counsel be overcome.

This Court finds the "ignored" issue was not "clearly stronger than those presented." As this opinion has already noted, the Illinois Appellate Court (64 Ill.App.3d at 216, 20 Ill.Dec. at 873, 380 N.E.2d at 1082) concluded (1) Pappas' role in the investigation of the case had been "relatively minor" and (2) only once during the opening statement had he mentioned his involvement in the case. And at that point the Court had immediately admonished him.

Hence as a matter of law Michael cannot justify his having omitted the Confrontation Clause claim from either Petition I or Petition II. That omission too was an abuse of the writ.

### Conclusion

There is no need for an evidentiary hearing, nor is there any genuine issue of material fact. This Court finds as a matter of law Michael waived both the bribery and Confrontation Clause claims. In addition, the omission of those claims from previous petitions was an abuse of the habeas writ. Gramley is entitled to a judgment as a matter of law. Petition III is dismissed.